# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1581-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Richard E. Houghton, Jr., |
| |         Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 354 Wis. 2d 623, 848 N.W.2d 904)
(Ct. App. 2014 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 14, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 22, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Walworth |
| JUDGE: | John R. Race |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, BRADLEY, J.J., dissent. (Opinion Filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Tiffany M. Winter*, assistant attorney general, with whom on the briefs was *Brad D. Schimel*, attorney general.

For the defendant-appellant there was a brief by *Andrew R. Walter*, Elkhorn, and oral argument by *Andrew R. Walter*.

An amicus curiae brief was filed by *Hannah Schieber Jurss*, assistant state public defender, with whom on the brief was *Kelli S. Thompson*, state public defender, on behalf of the Office of the State Public Defender.

NOTICE

**This opinion is subject to further editing and modification.  The final version will appear in the bound volume of the official reports.**

No.  2013AP1581-CR
(L.C. No.  2012CF187)

STATE OF WISCONSIN                    :        IN SUPREME COURT

State of Wisconsin,

     Plaintiff-Respondent-Petitioner,

  v.

Richard E. Houghton, Jr.,

     Defendant-Appellant.

**FILED**

**JUL 14, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Reversed.*

¶1    DAVID  T.  PROSSER,  J.   This  is  a  review  of  an unpublished decision of the court of appeals,[1] which reversed a judgment of conviction entered by the Walworth County Circuit Court[2] against Richard E. Houghton, Jr. (Houghton).   Houghton pled guilty to one count of possession of THC (greater than 200 grams) with intent to deliver, following the circuit court's

---

[1]  State v. Houghton, No. 2013AP1581-CR, unpublished slip op. (Wis. Ct. App. May 7, 2014).

[2]  The Honorable John R. Race, Judge.

denial of Houghton's motion to suppress evidence obtained during the course of a traffic stop.

¶2    This case presents questions related to the standard necessary for police to lawfully initiate a traffic stop. Specifically, we consider whether an officer's reasonable suspicion that a motorist is committing a traffic violation is always sufficient for the officer to stop the motorist, or whether some stops require probable cause.  We also examine statutes related to the placement of objects in the front windshield of an automobile, and weigh the effect of recent developments in case law related to objectively reasonable mistakes of law made by law enforcement officers.

¶3    Police Officer Jeff Price (Officer Price) pulled Houghton over after Officer Price observed Houghton's vehicle traveling on a highway without a front license plate and with an air freshener and a GPS unit visible in the front windshield. Upon approaching the vehicle, Officer Price detected the odor of marijuana, which led him to conduct a search of Houghton's car. The search revealed approximately 240 grams of marijuana as well as various paraphernalia commonly used for packaging and distributing marijuana.

¶4    Houghton argues that the stop was not an investigatory stop, and thus probable cause was required.  Houghton contends that Officer Price lacked probable cause to stop Houghton's vehicle, making the subsequent search unlawful.  The State counters that reasonable suspicion is sufficient for police officers to initiate any type of traffic stop, and that Officer

Price had reasonable suspicion to pull Houghton over for a violation of Wis. Stat. § 346.88(3)(b) (2011-12),[3] "Obstruction of operator's view or driving mechanism."  The State argues in the alternative that any mistake by Officer Price as to whether Houghton was operating his vehicle illegally was objectively reasonable, and that under the holding of the recent United States Supreme Court case of Heien v. North Carolina, 574 U.S. ___, 135 S. Ct. 530 (2014), Officer Price had reasonable suspicion to stop Houghton's vehicle for the perceived violation.

¶5   We hold that an officer's reasonable suspicion that a motorist is violating or has violated a traffic law is sufficient for the officer to initiate a stop of the offending vehicle.  We also adopt the Supreme Court's holding in Heien that an officer's objectively reasonable mistake of law may form the basis for a finding of reasonable suspicion.

¶6   In this case, we hold that Wis. Stat. § 346.88 does not create an absolute prohibition on any object being present in the front windshield of a vehicle.  However, Officer Price's interpretation that the statute did create such a prohibition was objectively reasonable.  Accordingly, Officer Price had reasonable suspicion to stop Houghton's vehicle, and it was not error for the circuit court to deny Houghton's motion to suppress.  For these reasons, we reverse the court of appeals.

---

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

3

I. FACTUAL AND PROCEDURAL BACKGROUND

¶7    At approximately 12:30 p.m. on April 16, 2012, Village of East Troy Police Officer Jeff Price was on duty in a marked squad car on the shoulder of Highway 20, facing east, near Townline Road in East Troy.  Around that time, Officer Price saw a blue Ford Taurus traveling westbound on Highway 20.  The car had no front license plate, and an air freshener suspended from the rearview mirror and a GPS unit were visible through the front windshield.  Officer Price did a U-turn, activated his squad car's emergency lights, and pulled the Taurus over.

¶8  Officer Price approached the Taurus and obtained identification from the occupants.  The car, which had a Michigan license plate attached to the back, was driven by the defendant, Richard E. Houghton, Jr., who is a resident of Michigan.  In the front passenger seat of the car was James J. Taracek (Taracek), Houghton's step-brother and a resident of East Troy.  After running a check on both Houghton and Taracek, Officer Price returned to the the Taurus, this time approaching the passenger side.  As he approached, Officer Price smelled the odor of marijuana coming from the car.

¶9  Officer Price searched the car and found the following: "two partially smoked marijuana cigarettes, a pack of zig-zag rolling paper, a piece of PVC tubing with a screen taped on one end, a large zip-lock bag containing green plant material, three smaller sandwich bags containing green plant material, a 150 count pack of sandwich bags, and an AMS digital scale with traces of green plant material on the weighing base."

4

The "green plant material" tested positive for Tetrahydrocannabinol (THC), the active ingredient in marijuana. The large "zip-lock" bag contained approximately 140 grams of marijuana, the three smaller sandwich bags each contained approximately 30 grams of marijuana, and the PVC tube contained approximately 9 grams of marijuana.

¶10 In an information filed on June 5, 2012, Houghton was charged with one count of possession with intent to deliver THC (200 to 1000 grams), contrary to Wis. Stat. § 961.41(1m)(h)2. On July 31, Houghton filed a motion with the circuit court seeking suppression of the evidence obtained during the search of his vehicle. Houghton argued that the lack of a front license plate on his car and the items in his windshield were not violations of Wisconsin law. Houghton contended that "because no traffic violations occurred, [Officer Price] lacked the reasonable suspicion to justify a Terry stop."[4] Therefore, Houghton argued, the stop violated his Fourth Amendment right against unreasonable search and seizure.

¶11 The State answered Houghton's motion to suppress on October 16. The State argued that Officer Price had reasonable suspicion to stop Houghton for three observed violations: the

_____

[4] Terry v. Ohio, 392 U.S. 1 (1968).

5

absence of a front license plate, the items in the front windshield, and a missing side mirror.[5]

¶12   The circuit court held a motion hearing on November 2, at which Officer Price testified briefly about his encounter with Houghton.   At the end of the hearing, the circuit court denied the motion.   The court was equivocal about whether the GPS unit and air freshener were statutory violations, noting that "there must be a zillion cars driving around with air fresheners and not very many of them would get stopped by the traffic officer.   They've got better things to do."   However, the court continued, "the princip[al] reason for the stop that creates this reasonable and articulable suspicion is the front license plate missing from a vehicle, missing on Wisconsin roads when Wisconsin requires two plates."

¶13   After denial of his motion to suppress, Houghton pled guilty to the count as charged at a hearing on February 13, 2013.   As part of the plea agreement, the State recommended a two-year sentence consisting of one year of imprisonment and one year of extended supervision, imposed and stayed on the condition that Houghton complete two years of probation and pay a $500 fine plus costs.   After a plea colloquy, the court

---

[5] Houghton's car was missing the mirror lens on the passenger side.  However, Officer Price did not notice the lens was missing from the mirror housing until after he stopped Houghton.  The State does not argue in this appeal that the missing mirror lens gave Officer Price reasonable suspicion to stop Houghton.

entered a judgment of conviction and accepted the sentence recommendation, allowing for the possibility that Houghton would serve probation in Michigan.

¶14 Houghton appealed his conviction. On appeal, Houghton argued that the circuit court erred by denying his motion to suppress evidence. Houghton maintained his argument that Officer Price lacked reasonable suspicion to stop Houghton's vehicle. The State conceded that Officer Price made a mistake of law with regard to the license plate requirement. The State also conceded that under State v. Longcore, 226 Wis. 2d 1, 9, 594 N.W.2d 412 (Ct. App. 1999), a mistake of law could not form the basis for a traffic stop. The State argued, however, that the items in the front windshield of Houghton's car gave Officer Price sufficient reason to pull Houghton over.

¶15 In an unpublished per curiam decision, the court of appeals reversed the judgment of conviction and remanded the case to the circuit court. State v. Houghton, No. 2013AP1581-CR, unpublished slip op. (Wis. Ct. App. May 7, 2014). The court provided little explanation for its ruling, noting that:

> the only objects near Houghton's front windshield were a standard-size, pine-tree-shaped air freshener hanging from the rearview mirror and a three-by-five-inch GPS unit attached to the lower left-hand corner. On these facts, we are not persuaded that there was probable cause to conclude that a violation of § 346.88(3)(b) had occurred.

Id. at 5.

¶16 The court of appeals did acknowledge that the Supreme Court had recently granted certiorari in Heien v. North

7

Carolina, 749 S.E.2d 278 (N.C. 2013), which addressed whether a reasonable mistake of law could provide grounds for a traffic stop. Houghton, No. 2013AP1581-CR, at 4 n.3. The court noted that the decision in Heien could place the holding of Longcore in doubt, and "suppose[d] the State [could] petition the Wisconsin Supreme Court for review and then ask that the petition be held in abeyance pending the outcome in Heien." Id.

¶17 The State petitioned this court for review and requested that we hold the petition in abeyance pending resolution of Heien. Following the release of the opinion in Heien, this court granted review on January 13, 2015.

## II. STANDARD OF REVIEW

¶18 Whether reasonable suspicion or probable cause is necessary for a law enforcement officer to stop a vehicle is a question of law we review de novo. See State v. Kramer, 2001 WI 132, ¶17, 248 Wis. 2d 1009, 637 N.W.2d 35. Whether a statute has been properly interpreted and applied also is a question of law we review de novo, but we do so "while benefitting from the analyses of the court of appeals and circuit court." 118th St. Kenosha, LLC v. DOT, 2014 WI 125, ¶19, 359 Wis. 2d 30, 41 N.W.2d 486 (quoting 260 N. 12th St., LLC v. DOT, 2011 WI 103, ¶39, 338 Wis. 2d 34, 808 N.W.2d 372). Finally, whether a defendant's constitutional rights were violated is a question of constitutional fact subject to a two-step standard of review. State v. Phillips, 218 Wis. 2d 180, 189, 577 N.W.2d 794 (1998). First, we uphold the circuit court's findings of historical fact unless they are clearly erroneous. State v. Williams, 2002 WI

8

94, ¶17, 255 Wis. 2d 1, 646 N.W.2d 834. Then, we review the circuit court's determination of the constitutional question de novo. Id.

### III. DISCUSSION

¶19 We begin by reviewing the law relating to investigatory traffic stops, then examine the evolution of case law involving stops predicated on reasonable mistakes of law. We then turn to an analysis of the relevant statutes in this case and conclude by applying the relevant law to the facts.

### A. Probable Cause and Reasonable Suspicion

¶20 Terry v. Ohio, 392 U.S. 1 (1968), is the seminal case on reasonable suspicion as justification for conducting investigatory stops. In Terry, the defendant was convicted of carrying a concealed weapon. Id. at 4. The arresting officer, a veteran detective with almost 40 years of experience, confronted Terry and his associates after observing them engage in a pattern of suspicious behavior. Id. at 5-7. After speaking to the men briefly, the detective grabbed Terry, spun him around, and performed a pat down search. Id. at 7. The search revealed a .38 caliber revolver in Terry's coat pocket. Id. Terry moved to suppress the evidence, arguing that the detective lacked probable cause to conduct the search. Id. at 7-8.

¶21 The Supreme Court affirmed Terry's conviction, holding that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no

probable cause to make an arrest." Id. at 22.    In order to justify such a seizure, police must have reasonable suspicion that a crime or violation has been or will be committed; that is, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Id. at 21.  This "reasonable suspicion" standard was understood to be a lower standard than probable cause.  See id. at 35-36 (Douglas, J., dissenting).

¶22  In Berkemer v. McCarty, 468 U.S. 420 (1984), the Court extended the reasoning underlying Terry to include traffic stops, holding that a police officer "who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit" a violation may conduct a traffic stop in order to "'investigate the circumstances that provoke suspicion.'"  See id. at 439 (citation omitted).  In other words, while probable cause is enough to justify a traffic stop, probable cause is not indispensable to justify a traffic stop.    Rather, police officers who reasonably suspect an individual is breaking the law are permitted to conduct a traffic stop "to try to obtain information confirming or dispelling the officer's suspicions." Id.

¶23  Twelve years after Berkemer, the Supreme Court decided Whren v. United States, 517 U.S. 806 (1996).  In Whren, the Court addressed whether temporarily detaining "a motorist who the police have probable cause to believe has committed a

10

civil traffic violation is inconsistent with the Fourth Amendment's prohibition against unreasonable seizures unless a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws." Id. at 808.

¶24 On June 10, 1993, D.C. Metro Police officers were patrolling an area of the city known for drug activity. Id. The officers grew suspicious of a vehicle with temporary plates and "youthful occupants" after seeing the driver of the vehicle "looking down into the lap of the passenger at his right." Id. The officers stopped the vehicle after observing it driving erratically, and upon approaching the vehicle, they observed Whren in possession of crack cocaine. Id. at 809. Whren was arrested and charged with multiple drug violations. Id. Prior to trial, the defense moved to suppress the evidence on the theory that the officers' "ground for approaching the vehicle——to give the driver a warning concerning the traffic violation——was pretextual." Id. at 809.

¶25 In an opinion by Justice Scalia, a unanimous Court held that the brief detention of a motorist who police have probable cause to believe has violated a traffic law is not an unreasonable search or seizure within the meaning of the Fourth Amendment, even if the officer would not have initiated the stop without some additional law enforcement objective. Id. at 808, 818-19. In other words, pretextual traffic stops——stops designed to investigate violations not related to the observed violation——are not per se unreasonable under the Fourth Amendment.

11

¶26 Since Whren, some have sought deeper meaning in the Court's assertion that, "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id. at 810 (emphasis added). Some courts interpreted Whren to mean that probable cause——not reasonable suspicion——is required for a traffic stop to be reasonable. See United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006) (discussing the uncertainty raised by Whren).

¶27 The existence of multiple standards necessary to justify traffic stops in Wisconsin was implied in State v. Gaulrapp, 207 Wis. 2d 600, 558 N.W.2d 696 (Ct. App. 1996). In Gaulrapp, the court of appeals stated that a "traffic stop is generally reasonable if the officers have probable cause to believe that a traffic violation has occurred, or have grounds to reasonably suspect a violation has been or will be committed." Id. at 605 (citations omitted). This dual-standard analysis continued in Longcore when the court of appeals noted that the officer "did not act upon a suspicion that warranted further investigation, but on his observation of a violation being committed in his presence," thus requiring the officer's observations to meet the probable cause standard. Longcore, 226 Wis. 2d at 8-9 (footnote omitted).

¶28 Houghton urges this court to hold that this dual standard is correct——that an investigative stop may be based on reasonable suspicion, but a stop for an observed violation must be based on probable cause. He argues that our decision in

State v. Popke, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569, recognized this distinction by citing Gaulrapp multiple times, and that stare decisis dictates that we adhere to it.  Houghton also argues that this dual standard provides proper protection to citizens' Fourth Amendment rights.

¶29 It is undisputed that traffic stops must be reasonable under the circumstances.  Gaulrapp, 207 Wis. 2d at 605.  It is also widely accepted that traffic stops may be justified by either probable cause or reasonable suspicion.  Popke, 317 Wis. 2d 118, ¶23.  The question here is whether this "either/or" principle means that reasonable suspicion will always suffice to initiate a traffic stop, or whether the nature of certain types of stops requires that a higher standard be met in those stops.

¶30 We conclude that reasonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops.[6]  The prevailing case law instructs that this is so.  See, e.g., Delfin-Colina, 464 F.3d at 396 ("the Second, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have all construed Whren to require only that the police have reasonable suspicion to believe that a traffic law has been broken.") (internal quotation marks omitted) (citation omitted). See also Berkemer, 468 U.S. at 439 ("the usual traffic stop is more analogous to a so-called 'Terry stop' than to a formal arrest");

_____

[6] In at least some circumstances, reasonable suspicion that a non-traffic-related law has been broken may also justify a traffic stop.  Cf. State v. Harris, 206 Wis. 2d 243, 258-61, 557 N.W.2d 245 (1996).

United States v. Ruiz, 785 F.3d 1134, 1141 (7th Cir. 2015); United States v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000) (collecting cases). As the Supreme Court has noted, "detention of a motorist pursuant to a traffic stop is presumptively temporary and brief." Berkemer, 468 U.S. at 437. When weighed against the public interest in safe roads, we are satisfied that the "temporary and brief" detention of a traffic stop is an "appropriate manner" in which a police officer may "approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry, 392 U.S. at 22.

## B. Reasonable Mistakes of Law

¶31 At issue in this case is whether a seizure predicated by an objectively reasonable mistake of law violates constitutional protections against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution provide these protections.[7] The "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited

---

[7] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Article I, Section 11 of the Wisconsin Constitution uses identical language. See Wis. Const. Art. I, § 11. We have historically read these provisions as coextensive. State v. Artic, 2010 WI 83, ¶28, 327 Wis. 2d 392, 786 N.W.2d 430.

14

purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. <u>Whren</u>, 517 U.S. at 809-10. <u>See also</u> <u>Popke</u>, 317 Wis. 2d 118, ¶11.

¶32 In the past, Wisconsin courts have held that a seizure predicated on a police officer's mistake of law is invalid under the Fourth Amendment. <u>See</u> <u>State v. Brown</u>, 2014 WI 69, ¶22, 355 Wis. 2d 668, 850 N.W.2d 66; <u>Longcore</u>, 226 Wis. 2d at 3-4. However, the Supreme Court's recent decision in <u>Heien</u> is at odds with these holdings.

¶33 A brief review of the relevant case law is useful to provide context for our decision.

¶34 In 1999, the court of appeals issued its opinion in <u>Longcore</u>. <u>Longcore</u> involved police officer Kevin Larson, who became suspicious of a vehicle when he observed it leaving the parking lot of several closed businesses at about 2:00 a.m. <u>Longcore</u>, 226 Wis. 2d at 4. Officer Larson also observed that the rear passenger window of the vehicle was missing and had been replaced with a plastic sheet. <u>Id.</u> Officer Larson believed the plastic sheet violated Wis. Stat. § 347.43(1), which required that safety glass be properly equipped in all cars manufactured after 1935. <u>Id.</u> After pulling the car over, Officer Larson discovered that the driver of the car, Michael Longcore, was operating with a suspended license. <u>Id.</u> at 3.

¶35 The circuit court concluded that the stop was valid, reasoning, "[T]he officer believed a traffic regulation was being violated, the regulation is ambiguous, the officer's interpretation was reasonable and therefore his suspicion that

15

the law was violated was reasonable."  Id. at 5.  However, the court of appeals reversed the circuit court.  The court of appeals stated:

> If the facts would support a violation only under a legal misinterpretation, no violation has occurred, and thus by definition there can be no probable cause that a violation has occurred.  We conclude that when an officer relates the facts to a specific offense, it must indeed be an offense; a lawful stop cannot be predicated upon a mistake of law.

Id. at 9.

¶36  Longcore was affirmed by this court in a per curiam opinion after the court divided 3-3 on whether to affirm or reverse the court of appeals.  State v. Longcore, 2000 WI 23, 233 Wis. 2d 278, 607 N.W.2d 620.

¶37  This court was confronted with a similar scenario 14 years later in Brown.  On the night of July 3, 2010, Antonio Brown and a friend attended a barbeque together.  Brown, 355 Wis. 2d 668, ¶8.  After the barbeque, the friend drove Brown home in Brown's car because Brown was too intoxicated to drive himself.  Id.  The two were stopped by Milwaukee police officers William Feely and Michael Wawrzonek, who believed that an unlit bulb in the car's tail lamp violated Wis. Stat. § 347.13(1).  Id., ¶¶2, 7.  The officers eventually conducted a search of the vehicle, which revealed a firearm under the front seat.  Id., ¶7.

¶38  Brown sought to suppress the evidence, arguing that the stop of his car was unconstitutional and the subsequent search was therefore invalid.  See id., ¶12.  The court of

16

appeals held that the police lacked probable cause or reasonable suspicion to stop Brown's vehicle, and because there was no probable cause or reasonable suspicion to support the stop, the evidence from the search should have been suppressed. Id., ¶¶14-16.

¶39 This court affirmed the court of appeals. The majority opinion noted that prior holdings provided "if the officers' interpretation of the law were incorrect . . . the stop would be unconstitutional because a lawful stop cannot be predicated upon a mistake of law." Id., ¶22 (citing Longcore, 226 Wis. 2d at 9). In examining the relevant statutes, the court determined that Wis. Stat. § 347.13(1) did not require every single light bulb in a vehicle's tail lights to work. Id., ¶3. Rather, the statute required only that the tail lights "be in proper working condition" and visible from 500 feet away in the dark. Id. Thus, "[b]ecause having one unlit bulb on the back of a vehicle does not on its own violate the statutory requirements for tail lamps, the State . . . failed to show that the officers had probable cause to believe that a traffic violation had occurred." Id., ¶38.

¶40 In dissent, Justice Roggensack——joined by Justice Ziegler——argued that a search based on a reasonable mistake of law is constitutional. Id., ¶91 (Roggensack, J., dissenting). Specifically, an officer's mistake of law is reasonable if a statute is "ambiguous or unclear so that an objectively reasonable officer could form a reasonable belief that a violation was occurring, even when it was not." Id.

17

¶41  Shortly after Brown, the Supreme Court also considered the issue of a seizure premised on a police officer's mistake of law.  On the morning of April 29, 2009, a police sergeant began to follow a vehicle after noticing that the driver looked "very stiff and nervous."  Heien, 135 S. Ct. at 534.  When the vehicle braked, the sergeant noticed that one of the vehicle's brake lights was not working and he stopped the vehicle.  Id.  While issuing a written warning for the broken brake light, the sergeant became suspicious of the behavior of the occupants and their conflicting answers to questions he asked.  Id.    The sergeant asked for and received consent to search the vehicle, whereupon he discovered a bag containing cocaine.  Id.  Heien was arrested and charged with attempted trafficking in cocaine. Id. at 535-36.

¶42  As it turned out, having only one functioning brake light is not a violation of law in North Carolina.  Id. at 536. Thus, on appeal, the Supreme Court had to determine whether the sergeant's mistake of law nevertheless could have provided "the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment."  Id. at 534.

¶43  The Court began its decision by noting that under the Fourth Amendment:

> a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake.  An officer might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children are slumped over asleep in the

18

back seat.    The driver has not violated the law, but neither has the officer violated the Fourth Amendment.

Id.

¶44   The Court held that an objectively reasonable mistake of law could give rise to reasonable suspicion.    "Because the officer's mistake about the brake-light law was reasonable, the stop . . . was lawful under the Fourth Amendment."    Id.    In support of this holding, the Court noted, "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection."    Id. at 536.

¶45   The Court further explained:

Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law.    The officer may be reasonably mistaken on either ground.    Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

Id.

¶46   Thus, under Heien, a seizure predicated on reasonable suspicion based on a law enforcement officer's objectively reasonable mistake of law is not a violation of an individual's Fourth Amendment rights.    This holding, however, stands in stark contrast to the precedents established in Longcore and Brown. We therefore must determine which rule controls.

19

¶47 The majority opinion in Brown noted that the parties in that case agreed that a traffic stop predicated on a mistake of law was unconstitutional. Brown, 355 Wis. 2d 668, ¶22. This agreement between the parties was based on their common understanding that Longcore was the settled and accepted law of Wisconsin. Id. As noted above, the court of appeals in Longcore "conclude[d] that when an officer relates the facts to a specific offense, it must indeed be an offense; a lawful stop cannot be predicated upon a mistake of law." Longcore, 226 Wis. 2d at 9. However, the court of appeals provided no authority for this proposition.

¶48 The majority opinion in Brown also cited to a number of federal circuit courts that have held that a mistake of law cannot provide the basis for a traffic stop. Brown, 355 Wis. 2d 668, ¶23. While those cases undoubtedly provided persuasive authority at the time Brown was decided, the Supreme Court's decision in Heien abrogated those cases which were based on the Fourth Amendment, as the Supreme Court has the final say on the meaning of the Fourth Amendment.

¶49 Of course, it is uncontested that a state's constitution may provide citizens with protections beyond those afforded by the United States Constitution. However, we have traditionally understood the Wisconsin Constitution's provision on search and seizure to be coextensive with the Fourth Amendment. State v. Artic, 2010 WI 83, ¶28, 327 Wis. 2d 392, 786 N.W.2d 430.

20

¶50 "Where . . . the language of the provision in the state constitution is 'virtually identical' to that of the federal provision . . . , Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution."  State v. Agnello, 226 Wis. 2d 164, 180-81, 593 N.W.2d 427 (1999) (citing State v. Tompkins, 144 Wis. 2d 116, 133, 423 N.W.2d 823 (1988)).  Here, the relevant portions of the federal and state constitutions are "virtually identical." Compare U.S. Const. amend. IV with Wis. Const. art. I, § 11. Accordingly, our standard practice dictates that we interpret the search and seizure provision of the Wisconsin Constitution consistently with the search and seizure provision of the United States Constitution.

¶51 We are sensitive to the fact that Brown was decided only one year ago.  It is unusual for this court to overrule a holding after such a short period of time.  However, it would be equally unusual for this court to ignore a holding of the Supreme Court that interprets a provision of the United States Constitution virtually identical to a provision in the Wisconsin Constitution.

¶52 Accordingly, we hold that an objectively reasonable mistake of law by a police officer can form the basis for reasonable suspicion to conduct a traffic stop.  All Wisconsin cases holding otherwise are hereby overruled to the extent they conflict with this holding.

C. Pertinent Statutes

¶53 Before analyzing the case at hand, we consider the statutes that formed the basis for Officer Price's stop of Houghton. For Officer Price's interpretation of these statutes to be "objectively reasonable," we must first consider their meaning.

¶54 Our purpose in interpreting a statute is to "determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. To do this, we begin with the language of the statute, giving words their "common, ordinary, and accepted meaning"; technical words are given their technical or special definitional meaning. Id., ¶45. We then consider that language in light of the statute's structure and context as well as in "relation to the language of surrounding or closely-related statutes . . . to avoid absurd or unreasonable results." Id., ¶46. See Force ex rel. Welcenbach v. Am. Family Mut. Ins. Co., 2014 WI 82, ¶30, 356 Wis. 2d 582, 850 N.W.2d 866. A statute's "context" includes its statutory history, which "encompasses previously enacted and repealed provisions of [the] statute." Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581.

¶55 "If this process of analysis yields a plain, clear statutory meaning . . . the statute is applied according to this ascertainment of its meaning." Kalal, 271 Wis. 2d 633, ¶46 (quoting Bruno v. Milwaukee Cnty., 2003 WI 28, ¶20, 260 Wis. 2d 633, 660 N.W.2d 656). However, if the meaning of the statute is unclear after examining the statute's language, we

22

will consult extrinsic sources, including items of legislative history, to resolve any ambiguities. Id., ¶50.

¶56 The Wisconsin Statutes contain a tremendous number of provisions directed toward safety on the roadway. At the fore in this case are statutory sections related to Wisconsin's unobstructed windshield requirement, set forth in Wis. Stat. § 346.88, that motorists have a clear view of the roadway when operating a vehicle. At issue in this case are subsections 346.88(3)(a) and (3)(b). These sections provide:

> (3)(a) No person shall drive any motor vehicle with any sign, poster or other nontransparent material upon the front windshield, front side wings, side windows in the driver's compartment or rear window of such vehicle other than a certificate or other sticker issued by order of a governmental agency. Such permitted sticker shall not cover more than 15 square inches of glass surface and shall be placed in the lower left-hand corner of the windshield; the left corner being on the driver's left when seated behind the wheel.

> (b) No person shall drive any motor vehicle upon a highway with any object so placed or suspended in or upon the vehicle so as to obstruct the driver's clear view through the front windshield.

¶57 The first thing we note about these provisions is that each provision has a slightly different character. Subsection (3)(a) appears to be an absolute prohibition on the placement of "any sign, poster or other nontransparent material upon the front windshield, front side wings, side windows in the driver's compartment or rear window of" a vehicle, with a small exception for government certificates or stickers. Subsection (3)(b), on the other hand, forbids the placement of all items if they would

23

"obstruct the driver's clear view through the front windshield." In other words, subsection (3)(a) appears to be a strict prohibition on a narrow group of items, while subsection (3)(b) is a slightly more forgiving prohibition that applies to all items.

¶58 The State urges this court to adopt a reading of these subsections that a driver may have <u>nothing</u> attached to or suspended from the front windshield——including the rearview mirror——except those items specifically exempted in subsection (3)(a). The State made clear at oral argument that this prohibition would apply to oil change stickers and rosaries as well as standard pine-tree-shaped air fresheners.[8]

¶59 We note that the interpretation of these subsections is a close case. In truth, however, we are unpersuaded that the purpose of subsections (3)(a) and (3)(b) is to create an <u>absolute</u> prohibition on <u>any</u> items being attached to or suspended from a vehicle's front windshield or rearview mirror.

¶60 Subsection (3)(a) creates an absolute prohibition on "any sign, poster or other nontransparent material upon the

---

[8] "Little Trees" air fresheners have been sold in the United States since the mid-1950s. The air fresheners were created by German-Jewish chemist Julius Samaan, who fled the Nazis for North America before developing his product. The Car-Freshener Corporation of Watertown, New York, now offers Little Trees air fresheners in some 60 scents. Car-Freshener Corporation's president claims the company has sold "billions" of air fresheners in its history. <u>See generally</u> Hilary Greenbaum and Dana Rubenstein, <u>Who Made That? (Little Trees)</u>, New York Times Magazine, 19 (Mar. 4, 2012).

front windshield . . . ."  By contrast, another provision of the same statute, subsection (4), states: "The windshield, side wings and side and rear windows of a motor vehicle shall be kept <u>reasonably</u> clean at all times."  (Emphasis added.)  We see no reason why the legislature would choose to ban oil change stickers, often no more than one or two square inches in size and placed in a top corner of a windshield, but require that same area of a windshield be only "reasonably" clean.[9]  Instead, we interpret subsection (3)(a) to prohibit the attachment of "sign[s], poster[s]," and other items <u>of a similar nature</u> to the

---

[9] At the motion hearing, the circuit court briefly examined Officer Price about the area of the windshield that is within reach of the wipers.  The court noted that "manufacturers determine the area, that is the area that's critical for the operation of a motor vehicle as determined by the manufacturers."  The court asked Officer Price whether it would be reasonable to define an obstruction as something that obstructs the area within the extent of wiper coverage.

Officer Price did not specifically answer the question, but the question itself raises its own interesting questions.  For example, what if the area of the windshield beyond the range of the wipers is entirely covered with snow?  Under the State's argument, the presence of the snow may not be a violation.  However, if the driver were to stop and clean the entire windshield——thereby exposing a one-inch by two-inch oil change sticker——the driver may then be subject to a ticket, even though the driver's view would be significantly less obstructed than it would have been had the driver not cleaned away the snow.

front windshield of a motor vehicle.[10]  See State v. Engler, 80 Wis. 2d 402, 408-09, 259 N.W.2d 97 (1977) ("The doctrine of ejusdem generis . . . provides that when a general word is used in a statute, either preceded or followed by specific words in an enumeration, the general word is construed to embrace something similar to the specific word.").

¶61 Unlike subsection (3)(a), subsection (3)(b) applies to "any object" in or on a vehicle.  However, an object is prohibited only if it "obstruct[s] the driver's clear view through the front windshield."  The key term in this provision——"obstruct"——is not defined by the statutory scheme.  As such, we give the term its "common, ordinary, and accepted meaning." Kalal, 271 Wis. 2d 633, ¶45.

¶62 Black's Law Dictionary defines "obstruct" as "To block or stop up . . . to close up or close off, esp. by obstacle . . . .  To make difficult or impossible; to keep from happening; hinder . . . .  To cut off a line of vision; to shut out . . . ."  Black's Law Dictionary 1246 (10th ed. 2014)

---

[10] At oral argument, the State was asked about the legality of a plastic I-Pass prepaid toll collection transponder attached to a front windshield.  The State postulated that an I-Pass transponder would be exempt from Wis. Stat. § 346.88(3)(a) for two reasons: because it can be affixed behind the rearview mirror, and because it is issued by a government agency. However, subsection (3)(a) exempts only certificates and stickers issued by a government agency, and makes no exemption for any otherwise-prohibited item that is placed behind the rearview mirror.  Thus, we fail to see how the State's strict reading of the statute would not also outlaw the use of an I-Pass transponder.

(emphasis added).  This definition suggests that an object needs to have more than a de minimus effect on the driver's vision to be considered an "obstruction" of a driver's clear view.

¶63 Although there appears to be no published case law directly on point, Walker v. Baker, 13 Wis. 2d 637, 109 N.W.2d 499 (1961), indirectly supports this position.  Walker was a tort case in which the defendant, Baker, was found liable for Walker's injuries incurred in an automobile accident.  At trial, the circuit court denied Baker's request to include a jury instruction for plaintiff's negligence related to Walker's possibly "obstructed view through his windshield."  Id. at 643-44.  This court noted:

> While there is testimony that Walker had a pair of plastic dice suspended over his windshield, there is no evidence that this interfered with his vision, and it would be pure speculation on the part of the jury so to find.  The trial court properly refused to submit the requested instruction as to this aspect of the case.

Id. at 644.

¶64 It seems likely that, had Walker's "plastic dice suspended over his windshield" been a violation of Wis. Stat. § 346.88,[11] a jury instruction would have been in order.

¶65 Given the above, we conclude that Wis. Stat. § 346.88(3)(b)——which requires that an object "obstruct" a

---

[11] Wisconsin Stat. § 346.88 has not changed since there was a comprehensive revision of the motor vehicle code in 1957.  See Chapter 260, Laws of 1957.  In fact, much of the language in § 346.88 is unchanged since 1929.  See §§ 85.35(1) and (3), 1929 Statutes.

27

driver's clear view to be a violation——does not mean that _every_ object in a driver's clear view is a violation.  Rather, we interpret subsection (3)(b) as requiring a _material_ obstruction——even if minor——in order to be considered a violation of the statute.

## D. Analysis

¶66 Having concluded both that reasonable suspicion can form the basis for any traffic stop and that an officer can form reasonable suspicion to initiate a traffic stop based on an objectively reasonable mistake of law, and having addressed the statutory sections at issue in this case, we turn to the ultimate question of whether Officer Price's initiation of a traffic stop against Houghton violated Houghton's constitutional rights.

¶67 The State contends that Officer Price's stop of Houghton was not based on a mistake of law because the presence of the GPS unit and air freshener in Houghton's front windshield was indeed a violation of Wis. Stat. § 346.88.  The State argues in the alternative that any mistake of law by Officer Price as to whether those items violated the statute was objectively reasonable.  Houghton counters that it was not objectively reasonable for Officer Price to interpret the statute as carrying an absolute prohibition on all items in the front windshield, pointing to Justice Kagan's concurrence in _Heien_—— joined by Justice Ginsburg——in which she stated that objectively reasonable mistakes of law are "exceedingly rare." _Heien_, 135 S. Ct. at 541 (Kagan, J., concurring).

28

¶68 Justice Kagan's concurrence also expanded on what could constitute an objectively reasonable mistake of law:

A court tasked with deciding whether an officer's mistake of law can support a seizure thus faces a straightforward question of statutory construction. If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not. As the Solicitor General made the point at oral argument, the statute must pose a "really difficult" or "very hard question of statutory interpretation."

Id.

¶69 Justice Kagan noted that the difference between a "stop lamp" and a "rear lamp" in the North Carolina statute offered "conflicting signals" as to how the statute should be interpreted. Id. at 541-42. She concluded that the sergeant's interpretation of the statute was objectively reasonable because the sergeant's "judgment, although overturned, had much to recommend it." Id. at 542.

¶70 Here, we conclude that Officer Price's interpretation of Wis. Stat. § 346.88——that the statute prohibited the placement of any object in the front windshield——was objectively reasonable. That the statute has never been interpreted before

29

weighs in favor of this decision.[12]  See id. at 540 (majority opinion) ("This 'stop lamp' provision, moreover, had never been previously construed by North Carolina's appellate courts."). Our conclusion that the analysis of the statute is a close call also advances this conclusion.  See id. at 542 (Kagan, J., concurring) ("The critical point is that the statute poses a quite difficult question of interpretation . . . .").

¶71 Because "a reasonable judge could agree with the officer's view" in this case, id. at 541, we hold that Officer Price's mistake of law was objectively reasonable, and that the stop of Houghton's vehicle therefore was not unlawful.

¶72 We turn briefly to the issue of Houghton's "missing" front license plate.  Although the State concedes that Officer Price's interpretation of the license plate statute was not objectively reasonable, we choose to address this issue to

---

[12] We note that some unpublished Wisconsin cases have found reasonable suspicion or probable cause of a violation of subsection (3)(b) based on items hanging from a rearview mirror. E.g., State v. Currie, No. 2011AP322-CR, unpublished slip op., ¶2 (Wis. Ct. App. Jul. 19, 2011) ("a very large air freshener"); State v. Jury, No. 2010AP622-CR, unpublished slip op., ¶7 (Wis. Ct. App. Sept. 1, 2010) (necklace visible "from a distance of 200 feet"); State v. Avery, No. 2001AP1995-CR, ¶4 (Wis. Ct. App. Feb. 13, 2002) ("a bunch of stuff hanging from the rearview mirror").  We cite these cases not for any persuasive authority, but merely to show that the issue of windshield obstruction does arise in Wisconsin from time to time.

In any event, none of these cases suggest either way whether subsection (3)(b) is an absolute prohibition on all items placed in a front windshield.

provide guidance in future cases and because it was the basis of the circuit court's decision.

¶73 It is clear that Wis. Stat. § 341.15 requires a vehicle to display a front license plate only when two license plates are issued for that vehicle. Officer Price's belief that Houghton was violating the statute by not having a front plate was not a reasonable mistake of law to the extent that it implies that all vehicles must display a front license plate.

¶74 An officer who observes a vehicle driving without a front license plate may have no way of knowing whether that vehicle is required to display a front plate. Whether a vehicle is indeed required to display a front plate is both a question of law and a question of fact——the operative fact being whether the vehicle was issued two plates. Thus, it could perhaps be argued that a stop based on the lack of a front plate when the vehicle was issued only one plate is based on a mistake of fact rather than a mistake of law.

¶75 Because searches and seizures can be based on mistakes of fact, see Illinois v. Rodriguez, 497 U.S. 177, 183-86 (1990); State v. Reierson, No. 2010AP596-CR, unpublished slip op., ¶1 (Wis. Ct. App. Apr. 28, 2011), we confront the question of whether the lack of a front license plate, without more, may give rise to reasonable suspicion to conduct a traffic stop. To answer this question in the affirmative, we would have to hold that it is reasonable for a police officer in Wisconsin to believe that, if a vehicle is operating on a Wisconsin road, it must have been issued two license plates.

31

¶76 Such a belief would usually be unreasonable. Wisconsin borders four other states, and residents from those and many other states pass through Wisconsin on a regular basis. That most vehicles on Wisconsin roads might be registered in Wisconsin and most vehicles registered in Wisconsin might be issued two plates is not enough to conclude that a stop of a vehicle solely because it lacks a front license plate passes constitutional muster.

¶77 On the other hand, if an officer observes some indicia that a vehicle without a front license plate is from Wisconsin, then the officer may indeed have reasonable suspicion to stop the vehicle. Perhaps the most common indication would be a Wisconsin plate attached to the rear of the vehicle in question. However, other things may clue an officer in to a vehicle's origins as well——for example, markings indicating an affiliation with a local business.

¶78 Here, however, there was no initial indication that Houghton's vehicle was from Wisconsin. Once Officer Price was behind Houghton's vehicle, it would have become apparent from the rear plate that the vehicle was registered in Michigan. Thus, to the extent that Officer Price may have believed that Houghton was violating the law by not having a front license plate displayed, we hold that belief was neither a reasonable mistake of law nor a reasonable mistake of fact.

## IV. CONCLUSION

¶79 We hold that an officer's reasonable suspicion that a motorist is violating or has violated a traffic law is

32

sufficient for the officer to initiate a stop of the offending vehicle.   We also adopt the Supreme Court's holding in Heien that an officer's objectively reasonable mistake of law may form the basis for a finding of reasonable suspicion.

¶80  In this case, we hold that Wis. Stat. § 346.88 does not create an absolute prohibition on any object being present in the front windshield of a vehicle.   However, Officer Price's interpretation that the statute did create such a prohibition was objectively reasonable.   Accordingly, Officer Price had reasonable suspicion to stop Houghton's vehicle, and it was not error for the circuit court to deny Houghton's motion to suppress.   For these reasons, we reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶81 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The majority opinion reverses the decision of the court of appeals and affirms the defendant's conviction. The conviction was based on a denial of the defendant's motion to suppress evidence obtained from a traffic stop. The traffic stop was predicated on a law enforcement officer's mistake of law, which the majority opinion deems "objectively reasonable."[1]

¶82 By declaring for the first time that reasonable suspicion for a traffic stop can rest on a law enforcement officer's objectively reasonable mistake of law, the majority opinion adopts a new interpretation of Article I, Section 11 of the Wisconsin Constitution. It does so solely in order to remain in lockstep with the United States Supreme Court's interpretation of the Fourth Amendment.[2]

¶83 The majority opinion overturns not only the court of appeals decision in the instant case but also two prior decisions: State v. Brown, 2014 WI 69, 355 Wis. 2d 668, 850 N.W.2d 66, and State v. Longcore, 226 Wis. 2d 1, 594 N.W.2d 412 (Ct. App. 1999). What happened to precedent and stare decisis?

¶84 I would adhere to precedent, reaffirm Brown and Longcore, and affirm the court of appeals decision in the instant case.

---

[1] Majority op., ¶71.

[2] Majority op., ¶¶46-52.

¶85 In Brown, an opinion released just last year, this court held that reasonable suspicion for a traffic stop cannot rest on a law enforcement officer's mistake of law.[3] After Brown was decided, the United States Supreme Court held in Heien v. North Carolina, 135 S. Ct. 530 (2014), that under the Fourth Amendment, a law enforcement officer's reasonable mistake of law can support reasonable suspicion for a traffic stop.

¶86 The majority opinion in the instant case does an about-face, adopting the United States Supreme Court's interpretation of the Fourth Amendment in Heien as the correct interpretation of the Wisconsin Constitution.

¶87 The drafters of the Wisconsin Constitution could have simply said "ditto" and incorporated the federal Bill of Rights into the Wisconsin Constitution. But they did not. Instead, they adopted a separate and distinct Wisconsin Declaration of Rights.

¶88 In the instant case and many like it, this court is doing what the drafters of the Wisconsin Constitution did not do, namely adopting the federal Bill of Rights. More specifically, by adopting wholesale the United States Supreme Court's interpretation of the federal Bill of Rights as the proper interpretation of Wisconsin's Declaration of Rights, this court is in effect replacing Wisconsin's Declaration of Rights with its federal counterpart. This court is not taking

---

[3] State v. Brown, 2014 WI 69, ¶¶22-25, 355 Wis. 2d 668, 850 N.W.2d 66.

2

seriously the Justices' oath of office to support the Wisconsin Constitution.

¶89 <u>Heien</u> is binding on this court only insofar as the federal constitution is concerned. It is not binding with regard to the state constitution. This court need not and should not automatically adopt the United States Supreme Court's interpretation of the Fourth Amendment as the proper interpretation of Article I, Section 11 of the Wisconsin Constitution.

¶90 In <u>Brown</u>, this court set forth three primary reasons for its determination that reasonable suspicion cannot rest on a law enforcement officer's mistake of law:

1. Wisconsin precedent so stated. In <u>State v. Longcore</u>, 226 Wis. 2d 1, 9, 594 N.W.2d 412 (Ct. App. 1999), the court of appeals declared that "a lawful [traffic] stop cannot be predicated upon a mistake of law."

2. Other jurisdictions were in accord. A substantial majority of both the federal circuit courts and the state courts that had addressed the issue had concluded that a law enforcement officer's mistake of law cannot support reasonable suspicion or probable cause for a traffic stop.[4]

3. Holding that a law enforcement officer's mistake of law could support lawful traffic stops would defeat the purpose of the exclusionary rule. More

---

[4] <u>Brown</u>, 355 Wis. 2d 668, ¶¶23, 25. <u>See also</u> <u>Heien v. North Carolina</u>, 135 S.Ct. 530, 544 (2014) (Sotomayor, J., dissenting).

3

specifically, declining to exclude evidence that was gathered from a traffic stop premised on a law enforcement officer's erroneous view of the law "would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey."[5]

¶91 These considerations remain persuasive and convince me to adhere to Brown. A law enforcement officer's reasonable mistake of law cannot, in my view, render a traffic stop reasonable in the eyes of the Wisconsin Constitution.

¶92 My position is supported by several cogent points that Justice Sotomayor makes in her dissent in Heien:

1. An inquiry into the reasonableness of officers' understanding of the law breaks with longstanding federal and state court precedent.[6]

2. The notion that the law is definite and knowable sits at the foundation of our legal system. Yet, Heien gives those who enforce the law leeway in interpreting and understanding it.[7]

---

[5] Brown, 355 Wis. 2d 668, ¶24 (internal quotation marks omitted).

[6] Heien, 135 S. Ct. at 542-43 (Sotomayor, J., dissenting).

[7] Id. at 543 (Sotomayor, J., dissenting).

Heien purports to rest on the concept of reasonableness, the touchstone of the Fourth Amendment. However, as Justice Sotomayor's dissent explains,

this broad statement simply sets the standard a court is to apply when it conducts its inquiry into whether the Fourth Amendment has been violated. It does not

(continued)

4

3.  Heien "further erod[es] the Fourth Amendment's protection of civil liberties in a context," namely traffic stops, "where that protection has already been worn down."[8]

4.  Heien is a significant expansion of officers' authority and leads one to wonder "how a citizen seeking to be law-abiding and to structure his or her behavior to avoid these invasive, frightening, and humiliating encounters could do so."[9]

5.  Because traffic stops can be annoying, frightening and humiliating, they have consequences for

---

define the categories of inputs that courts are to consider when assessing the reasonableness of a search or seizure, each of which must be independently justified. What this case requires us to decide is whether a police officer's understanding of the law is an input into the reasonableness inquiry, or whether this inquiry instead takes the law as a given and assesses an officer's understanding of the facts against a fixed legal yardstick.

Id. at 542.

[8] Heien, 135 S. Ct. at 543 (Sotomayor, J., dissenting).

For discussion of the "wearing down" of the protections of the Fourth Amendment in Wisconsin courts, see Alan Ball, How Effective are Fourth-Amendment Arguments in the Wisconsin Supreme Court?, SCOWstats, June 22, 2015, http://www.scowstats.com/2015/06/22/how-effective-are-fourth-amendment-arguments-in-the-wisconsin-supreme-court/ (last visited June 30, 2015) (reviewing decisions of the Wisconsin Supreme Court and concluding that the current judicial climate is inhospitable to Fourth Amendment arguments).

[9] Heien, 135 S. Ct. at 544 (Sotomayor, J., dissenting).

individuals and communities "and for their relationships with the police . . . ."[10]

6. Law enforcement officers have not been unduly hampered in the exercise of their duties by the rule that their mistakes of law are not considered as part of the Fourth Amendment reasonableness inquiry.[11]

7. There is scarcely any law that does not admit of some ingenious doubt.[12] A decision interpreting a law will not immunize the law from further interpretation. Interpretation of the law constitutes a substantial portion of court business.

¶93 These considerations apply with equal force in the context of the Wisconsin Constitution. Both precedent and policy compel me to conclude that a traffic stop premised on a law enforcement officer's mistake of law is unreasonable and thus unlawful under Article I, Section 11 of the Wisconsin Constitution.

¶94 Accordingly, the traffic stop at issue in the instant case, which was premised on a law enforcement officer's mistake

---

[10] Heien, 135 S. Ct. at 544 (Sotomayor, J., dissenting).

[11] Id.

[12] Id. Justice Kagan authored a concurrence in Heien explaining that an officer has made a reasonable mistake of law only when the statute in question is "genuinely ambiguous," "requires hard interpretive work," and "poses a quite difficult question." Heien, 135 S. Ct. at 541-42 (Kagan, J., concurring). I do not think the mistake of law at issue in the instant case falls within this exacting interpretation of what constitutes a reasonable mistake of law.

6

of law, was unlawful. The defendant's motion to suppress the evidence obtained from the unlawful traffic stop should have been granted, and the defendant's conviction should be reversed.

¶95 For the reasons set forth, I dissent.

¶96 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.