SEIDL, J.[1]
¶1 Brady Adams appeals a judgment, entered upon his no-contest pleas, convicting him of second-offense operating a motor vehicle while intoxicated (OWI) and possession of a firearm while intoxicated. Adams argues the circuit court erred by denying his motion to suppress evidence obtained from a traffic stop because the sheriff's deputy lacked reasonable suspicion to stop him. We agree, reverse the judgment, and remand with directions to grant Adams's motion to suppress.
BACKGROUND
¶2 At the hearing on Adams's motion to suppress, Forest County sheriff's deputy William Hujet testified that late in the evening of March 4, 2017, he responded to another deputy's request for backup after a traffic stop.[2] The stopped vehicle contained several individuals. During the stop, one individual fled the scene on foot. Hujet was told the direction of the fleeing individual and that the individual was seen weaving in and out of the woods. Hujet began searching the area near the traffic stop.
¶3 Approximately thirty minutes after Hujet's search began, a deputy notified Hujet about an oncoming vehicle. Adams was later identified as the vehicle's driver. Adams was driving within approximately one mile or less of where the suspect had fled the traffic stop at the time Hujet began to follow Adams's vehicle. At one point, Adams turned off Airport Road onto a different road that had no houses or lights, had woods on one side, and had a somewhat open space on the other. Hujet believed the road led to a dead end. Hujet continued on Airport Road past the side road on which Adams had turned, but Hujet could see Adams's vehicle in his rearview mirror. Hujet watched Adams apply his brake lights, stop, reverse back onto Airport Road, and then proceed in the direction he had come from-i.e., driving in the opposite direction as Hujet. Adams made a turn onto another road and was now "going right back towards the [fleeing suspect's] traffic stop." Hujet turned around and then initiated a traffic stop of Adams.
¶4 When asked at the suppression hearing the purpose for stopping Adams, Hujet testified that he "was searching for the person that ran from [the deputy]'s traffic stop." He explained, based on his prior experiences, that somebody fleeing on foot would use his or her cell phone to request to be picked up. With that in mind, Hujet explained that what "really caught [his] attention" was Adams's stopping and turning around, specifically on an unlit road with no houses that was mostly surrounded by woods. Hujet testified that he did not recall anything wrong with Adams's driving before stopping him.
¶5 Upon making contact with Adams, Hujet detected the odor of intoxicants coming from within the vehicle. He also observed that Adams's speech was "slow and slurred." Adams was arrested for second-offense OWI and subsequently charged with operation of a motor vehicle with a prohibited alcohol concentration (PAC), second offense, contrary to WIS. STAT. § 346.63(1)(b). Adams was also charged with carrying an unauthorized concealed weapon, contrary to WIS. STAT. § 941.23, and possession of a firearm while intoxicated, contrary to WIS. STAT. § 941.20(1)(b).
¶6 Adams moved to suppress all evidence obtained as a result of the traffic stop based upon Hujet's lack of reasonable suspicion to stop his vehicle. Following Hujet's testimony, the circuit court denied Adams's motion, concluding Hujet had reasonable suspicion to stop Adams. The court stated:
I think that the fact that someone flees from an officer is reasonable suspicion that he has committed a crime or [is] about to commit a crime .... [Adams] was in the area where the [suspect] could have been .... [Adams] may have had no contact at all or connection with [the suspect] who was fleeing from the officer. But that's not necessarily the criteria. It was basically to freeze the situation and to find out, based upon what [Hujet] saw and based upon the totality of the circumstances that [Adams] could have been picking up the [suspect] that was running from law enforcement, travel of the vehicle, and it stops and turns, that it did, were consistent with that.
Adams filed a reconsideration motion, which the court also denied. Adams entered no-contest pleas to the second-offense OWI and possession of a firearm while intoxicated charges. The court dismissed the PAC charge and dismissed but read in the carrying an unauthorized concealed weapon charge. Adams now appeals.
DISCUSSION
¶7 Adams argues the circuit court erred in denying his motion to suppress because Hujet lacked reasonable suspicion to stop Adams's vehicle. A traffic stop does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures when an officer has reasonable suspicion to believe a crime or traffic violation has been or will be committed by the vehicle's occupants. See WIS. STAT. § 968.24 ; State v. Houghton , 2015 WI 79, ¶21, 364 Wis. 2d 234, 868 N.W.2d 143. This standard requires that the stop be based on more than an officer's "inchoate and unparticularized suspicion or hunch." State v. Post , 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoting Terry v. Ohio , 392 U.S. 1, 27 (1968) ). Rather, an officer's reasonable suspicion must be supported by articulable facts that wrongful activity may be afoot. See United States v. Sokolow , 490 U.S. 1, 7 (1989). "The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." Post , 301 Wis. 2d 1, ¶13.
¶8 Whether an officer's suspicion is reasonable is a common sense test that turns on the totality of the facts and circumstances. Id. In assessing the totality of the circumstances for a traffic stop, "a driver's actions need not be erratic, unsafe, or illegal to give rise to reasonable suspicion." Id. , ¶24. "But police cannot simply pull over all vehicles on a certain road in hopes of finding violators." United States v. Bohman , 683 F.3d 861, 866 (7th Cir. 2012) (citing City of Indianapolis v. Edmond , 531 U.S. 32, 35-36 (2000) ).
¶9 We apply a two-step standard when reviewing a circuit court's ruling on a motion to suppress evidence on Fourth Amendment grounds. See State v. Martin , 2012 WI 96, ¶28, 343 Wis. 2d 278, 816 N.W.2d 270. We will uphold the court's factual findings unless they are clearly erroneous. State v. Eskridge , 2002 WI App 158, ¶9, 256 Wis. 2d 314, 647 N.W.2d 434. However, we independently decide whether the facts establish that a particular search or seizure occurred and, if so, whether it violated constitutional standards. See State v. Richardson , 156 Wis. 2d 128, 137-38, 456 N.W.2d 830 (1990). Where an unlawful stop occurs, the remedy is to suppress the evidence it produced. See State v. Washington , 2005 WI App 123, ¶10, 284 Wis. 2d 456, 700 N.W.2d 305.
¶10 The issue presented here is whether a reasonable officer in Hujet's position would reasonably suspect, under the totality of the circumstances, that wrongful activity by an occupant of Adams's vehicle might be afoot. Here, the State argues Hujet reasonably suspected that Adams was attempting to assist a suspect fleeing the police based upon the totality of the following circumstances: "the time of night, the direction of the fleeing subject on foot, the concurrent location of the ... Adams vehicle to that of the person being sought, and the vehicle stopping and then reversing directions." The State argues that these facts permitted Hujet to make a reasonable inference that Adams was in the area to pick up the fleeing suspect. Adams does not dispute these facts, or that the circuit court found those facts as a basis for its decision. He also does not assert the court erred by finding Hujet's testimony-and therefore the facts surrounding the traffic stop-to be credible. Rather, Adams asserts that the totality of these facts and circumstances were insufficient, as a matter of law, to create reasonable suspicion to stop his vehicle.
¶11 No Wisconsin precedent provides us a clear resolution of this issue under the unique facts of this case. However, we agree with Adams that Hujet lacked reasonable suspicion to stop Adams under the totality of the circumstances here. We cannot conclude that Adams's driving late at night, one-half hour or more after a suspect had fled the scene of a traffic stop within the vicinity of an active police search for that suspect, paired with Adams's turning around on a street with a dead end, would lead a reasonable officer to suspect that Adams "ha[d] committed, was committing, or [was] about to commit a crime," or any wrongdoing for that matter. See Post , 301 Wis. 2d 1, ¶13. Despite Hujet's prior experiences that fleeing suspects attempt to make arrangements by cell phone for a ride, there is no record here indicating that Hujet knew: (1) the fleeing suspect actually had a cell phone; (2) Adams actually had a cell phone (before he was stopped); (3) that there was any relationship between Adams and the fleeing suspect; (4) that anyone entered the vehicle while Adams stopped and turned around; or (5) even assuming both the suspect and Adams had cell phones and knew each other, that the fleeing suspect had asked Adams to pick him up because he was fleeing police . Without such evidence, we cannot determine that Hujet had a reasonable suspicion that Adams was attempting to wrongfully aid the suspect in flight from the police.
¶12 In short, there are no facts to support Hujet's "inchoate and unparticularized suspicion or hunch" that the fleeing suspect may have tried to use a cell phone to request that Adams pick him up. See id. , ¶10. Hujet lacked that "quantum of individualized, articulable suspicion" required for a constitutionally permissible traffic stop. See Delaware v. Prouse , 440 U.S. 648, 662 (1979). A different deputy notified Hujet that Adams's vehicle was entering into the search area. From that moment until when Hujet stopped Adams's vehicle, Hujet learned of no other facts indicating that Adams was in some way aiding, or otherwise had a connection to, the fleeing suspect. Presence in a suspect area cannot generally be used to impute suspicion onto another individual. See Bohman , 683 F.3d at 865. Without some articulable fact that connected Adams to the fleeing suspect, we conclude that, under the totality of the circumstances, the traffic stop was impermissible.
¶13 We determine the facts surrounding Hujet's stop of Adams are akin to those in Bohman , a Seventh Circuit case. In Bohman , the question presented on appeal was "whether the police may stop a vehicle only because it emerged from a site suspected of drug activity." Id. at 862. Sheriff's deputies in Lincoln County, Wisconsin, received reliable information about a known methamphetamine cook. Id. This information included a description of the cook's car and the location of a rural cabin where he was cooking the methamphetamine. Id. The deputies found the property described by the informant and surveilled it. Id. at 863. After witnessing "unusual" vehicle activity that the court later discredited, the deputies stopped a vehicle leaving the property when the vehicle started to approach the deputies' surveillance position. Id. The vehicle was not the one described by the informant as related to the methamphetamine cook. Id. However, during the traffic stop, one of the deputies, a seventeen-year veteran methamphetamine investigator, smelled the distinctive odor of a methamphetamine ingredient coming from the vehicle. Id. The deputies thus determined that they had uncovered the methamphetamine cooking site. Id.
¶14 The Seventh Circuit concluded that the deputies lacked reasonable suspicion to stop the vehicle. Id. at 865-66. The court determined that the deputies' stop of the defendant was based only on a hunch. Id. at 866. In so doing, the court relied on its prior decision in United States v. Johnson , 170 F.3d 708 (7th Cir. 1999). In Johnson , which the Bohman court found to be "indistinguishable," the court held that the "mere suspicion of illegal activity" in one place was not enough to transfer that suspicion to another person leaving the suspicious place. Bohman , 683 F.3d at 865 (citing Johnson , 170 F.3d at 720 ). This conclusion was because the stop would be "based on nothing more than generalized suspicions." Id. at 866 n.1.
¶15 We conclude that Hujet's stop of Adams's vehicle warrants the same outcome as Bohman . Hujet stopped Adams because he was driving in an area containing an at-large suspect, similar to Bohman being stopped within the vicinity of known illegal drug activity. Adams was also driving late at night in a secluded area, and exhibited some unusual, but legal, driving activity. Hujet transferred the reasonable suspicion of criminal activity attributed to the fleeing suspect onto Adams simply because he was driving within the search area, with Hujet having no knowledge of a connection between the fleeing suspect and Adams. We determine that these circumstances are similar to how the deputies in Bohman transferred their suspicion of criminal activity onto Bohman only because he left a suspected methamphetamine cooking site. Accordingly, like the Seventh Circuit in Bohman , we are persuaded that Hujet's stop of Adams was constitutionally impermissible. We therefore reverse Adams's judgment of conviction and remand the matter to the circuit court with directions to suppress the evidence obtained from Adams's traffic stop.
By the Court. -Judgment reversed and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

During the suppression hearing, Hujet did not explain the reason for that traffic stop, but it is irrelevant to our analysis.