ANN WALSH BRADLEY, J.
*734 ¶ 1 This case is before the court on a certified question from the United States Court of Appeals for the Seventh Circuit. Winebow, Inc. v. Capitol-Husting Co., Inc., 867 F.3d 862 (7th Cir. 2017) ; see Wis. Stat. § 821.01 (2015-16).[1] It certified the following question: "Does the definition of a dealership contained in Wis. Stat. § 135.02(3)(b) include wine grantor-dealer relationships?" Winebow, 867 F.3d at 871.
¶ 2 Our answer to this certified question will aid the Seventh Circuit in determining whether Winebow, Inc.'s (Winebow) attempt to end its business relationship with *633 two wine distributors is governed by the unilateral termination limitations of the Wisconsin Fair Dealership Law (WFDL). See Wis. Stat. § 135.03.
¶ 3 Winebow unilaterally terminated its relationship with Capitol-Husting Co., Inc. and L'Eft Bank Wine Co. Limited (the Distributors) after becoming *735 dissatisfied. It argues that the action was permissible because the parties' business relationship is not an "intoxicating liquor" dealership entitled to the protections of the WFDL. See §§ 135.02(3)(b), 135.066. On the other hand, the Distributors contend that a wine grantor-dealer relationship is a "dealership" entitled to such protections and thus Winebow cannot unilaterally terminate its relationship with the Distributors absent a showing of good cause.
¶ 4 We conclude that a wine grantor-dealer relationship is not included within the definition of a dealership in Wis. Stat. § 135.02(3)(b). Section 135.066(2) provides the operative definition of "intoxicating liquor" for purposes of ch. 135, and such definition explicitly excludes wine.
¶ 5 Accordingly, we answer the certified question in the negative.
I
¶ 6 Winebow is engaged in the business of importing and distributing wine to downstream wholesalers. Since 2004, Winebow has used Capitol-Husting as a distributor of its wines, and in 2009 it commenced a similar relationship with L'Eft Bank.
¶ 7 After becoming dissatisfied with the Distributors, Winebow abruptly terminated its relationship with them in February of 2015. The parties did not have any express written agreement that would prevent Winebow from unilaterally terminating their relationships.
¶ 8 The Distributors responded to Winebow's termination by letter, indicating their belief that they are entitled to the protections of the WFDL. Such *736 protections would prevent Winebow from terminating their relationships absent "good cause." See Wis. Stat. § 135.03.
¶ 9 Winebow countered by filing a declaratory judgment action in the United States District Court for the Eastern District of Wisconsin. Winebow, Inc. v. Capitol-Husting Co., Inc., No. 15-CV-225, slip op., 2015 WL 3791544 at *1 (E.D. Wis. June 18, 2015). It sought a declaration that it has no continuing obligations to the Distributors. Id.
¶ 10 The District Court ruled in Winebow's favor. It determined that "[w]ine is not intoxicating liquor in the context of the WFDL, and thus the [Distributors'] business relationship with Winebow is not subject to the unilateral termination limitations of Chapter 135." Id. at *4.
¶ 11 The Distributors appealed to the United States Court of Appeals for the Seventh Circuit, contending that wine dealerships are per se "intoxicating liquor" dealerships entitled to the protections of the WFDL. Winebow, 867 F.3d at 867. The Seventh Circuit certified to this court the question of whether the definition of "dealership" contained in Wis. Stat. § 135.02(3)(b) includes wine grantor-dealer relationships. Id. at 870-71.
II
¶ 12 Underlying this case are proposed statutory changes to the WFDL and the governor's partial veto of some of these changes. See 1999 Wis. Act 9, §§ 2166m, 2166s. We thus provide brief background on the WFDL, the proposed changes to it, and the partial veto.
¶ 13 The WFDL provides in part that a grantor of a dealership may not terminate *634 a dealership agreement without good cause. Wis. Stat. § 135.03 ; see *737 Ziegler Co., Inc. v. Rexnord, Inc., 139 Wis. 2d 593, 594, 407 N.W.2d 873 (1987). Its underlying purposes and policies include "[t]o promote the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis." § 135.025(2)(a). Additionally, it aims "[t]o protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships[.]" § 135.025(2)(b).
¶ 14 A grantor who violates the WFDL may be subject to an action for "damages sustained by the dealer as a consequence of the grantor's violation, together with the actual costs of the action, including reasonable attorney fees." Wis. Stat. § 135.06. Further, a "dealer also may be granted injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances." Id.
¶ 15 However, the WFDL does not apply to all business relationships, but only to those defined as "dealerships." In 1999, the legislature sought to broaden the WFDL's reach to ensure that "intoxicating liquor" dealers were protected. See 1999 Wis. Act 9, §§ 2166m, 2166s.
¶ 16 It did so by making two significant changes. First, it amended the definition of a "dealership" to include distributors of "intoxicating liquors." 1999 Wis. Act 9, § 2166m. The new definition, codified at Wis. Stat. § 135.02(3)(b), included within a "dealership":
A contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons by which a wholesaler, as defined in s. 125.02(21), is granted the right to sell or distribute intoxicating liquor or use a trade name, trademark, service mark, *738 logotype, advertising or other commercial symbol related to intoxicating liquor. This paragraph does not apply to dealerships described in s. 135.066(5)(a) and (b).
1999 Wis. Act 9, § 2166m.
¶ 17 This revised "dealership" definition explicitly incorporated the definition of "intoxicating liquor" found in Wis. Stat. ch. 125, which regulates alcohol beverages. Pursuant to Wis. Stat. § 125.02(8), "vinous liquors," or in other words "wine," is expressly included under the umbrella of "intoxicating liquor":
"Intoxicating liquor" means all ardent, spirituous, distilled or vinous liquors, liquids or compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing 0.5 percent or more of alcohol by volume, which are beverages, but does not include "fermented malt beverages."
§ 125.02(8).
¶ 18 Second, the legislature created Wis. Stat. § 135.066. 1999 Wis. Act 9, § 2166s. This new provision expressed the legislature's desire for a competitive and stable wholesale liquor market. See § 135.066(1). Like the legislature's revised definition of "dealership," the newly enacted § 135.066 imported the definition of "intoxicating liquor" from § 125.02(8). § 135.066(2).
¶ 19 Both of these changes were included in the 1999 budget bill. See 1999 Wis. Act 9. However, Governor Tommy Thompson used his partial veto power to alter the revisions passed by the legislature.[2]
*739 ¶ 20 Specifically, the governor struck language proposed by the legislature from both Wis. Stat. §§ 135.02(3)(b) and *635 135.066. With respect to § 135.02(3)(b), he deleted the cross-reference to the existing definition of "intoxicating liquor" found in ch. 125.[3]
¶ 21 Edits to Wis. Stat. § 135.066 were much more extensive. The governor eliminated large portions of § 135.066(2)-(4). What remained was the sole *740 sentence, " 'Intoxicating liquor' has the same meaning given in s. 125.02(8) minus wine."[4] *741 ¶ 22 Legislative findings enumerated in Wis. Stat. § 135.066(1) and a severability *636 provision in sub. (6) escaped the veto pen, but the governor struck several references to wine in sub. (5), a nonapplicability provision.[5] The legislature did not override the governor's veto. *742 III
¶ 23 This case requires us to interpret Wis. Stat. §§ 135.02 and 135.066. Statutory interpretation presents a question of law we review independently. Roberts v. T.H.E. Ins. Co., 2016 WI 20, ¶ 19, 367 Wis. 2d 386, 879 N.W.2d 492. We are not bound by the federal district court's interpretation, but it may aid in our analysis. Baldewein Co. v. Tri-Clover, Inc., 2000 WI 20, ¶ 10, 233 Wis. 2d 57, 606 N.W.2d 145 (citing Daanen & Janssen, Inc. v. Cedarapids, Inc., 216 Wis. 2d 395, 400, 573 N.W.2d 842 (1998) ).
IV
¶ 24 With the preceding context and standard of review in hand, we examine next the specific question certified by the Seventh Circuit: whether the definition of a dealership contained in Wis. Stat. § 135.02(3)(b) includes wine grantor-dealer relationships.
¶ 25 Winebow asserts that the "minus wine" definition of "intoxicating liquor" in Wis. Stat. § 135.066 applies to the entirety of ch. 135, and that consequently we should answer the certified question in the negative. Conversely, the Distributors contend that the definition of "dealership" in § 135.02(3)(b) incorporates the definition of "intoxicating liquor" from ch. 125, a definition that expressly includes wine.
¶ 26 Statutory interpretation begins with the language of the statute.
*743 State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we need not further the inquiry. Id.
¶ 27 Wisconsin Stat. § 135.066(2) defines "intoxicating liquor" as having "the meaning given in s. 125.02(8) minus wine." Winebow suggests that the language of the statute plainly and unambiguously excludes wine from the definition of "intoxicating liquor" for chapter 135.
¶ 28 We agree with Winebow. Its interpretation of Wis. Stat. § 135.066(2) is supported by several considerations. First, contrary to the Distributors' argument, the fact that the definition is not located in the *637 "definitions" section of the statute is not dispositive. Neither the Distributors nor the dissent cite any case law that exclusively tethers definitions to a correspondingly labeled section of the statutes.
¶ 29 Wisconsin Stat. § 135.066(2) provides the sole definition of "intoxicating liquor" in ch. 135, and it excludes wine. The term "intoxicating liquor" is used eleven times in chapter 135, but defined only once. We aim for uniformity of definitions within a statutory chapter, not diversity of definitions. See Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶ 31, 326 Wis. 2d 521, 785 N.W.2d 462. "When the same term is used throughout a chapter of the statutes, it is a reasonable deduction that the legislature intended that the term possess an identical meaning each time it appears." Id. For one definition of "intoxicating liquor" to control § 135.066 and another to control the rest of the chapter would run afoul of this maxim.
*744 ¶ 30 Rather, "[s]ections of statutes relating to the same subject matter must be construed in pari materia."[6] State v. Clausen, 105 Wis. 2d 231, 244, 313 N.W.2d 819 (1982). Applying this canon on interpretation here, we arrive at the conclusion that the single "intoxicating liquor" definition supplied in ch. 135 should apply to the entirety of the chapter.
¶ 31 Further, the Wis. Stat. § 135.066(2)"minus wine" definition would serve no purpose if limited in its application to § 135.066 but not the remainder of ch. 135. Outside of the "minus wine" definition, § 135.066 contains legislative findings, a nonapplicability provision, and a severability provision. The "minus wine" language does not affect any of these remaining provisions.[7] Limiting the application of the *745 "minus wine" definition to § 135.066 would render the language a nullity.[8]
¶ 32 Additionally, treatises on both the WFDL and alcohol regulation uniformly support our application of the "minus wine" definition provided by Wis. Stat. § 135.066(2). As one treatise on the WFDL advises, "intoxicating liquor refers to spirits, not wine or beer." Michael A. Bowen et al., The Wisconsin Fair Dealership Law § 4.34A at 61 (4th ed. 2012); see also id. (explaining that "the governor's partial vetoes of the 1999 amendment make it clear that he intended (3)(b) to be *638 inapplicable to wine wholesalers.").[9]
¶ 33 Similarly, a treatise on Wisconsin alcohol beverages regulation opines that "the applicable definition of intoxicating liquor in Wis. Stat. ch. 135 excludes wine, such that [ch. 135's] special WFDL provisions apply only to distilled-spirits distribution agreements." Aaron R. Gary, Alcohol Beverages Regulation in Wisconsin § 4.66 (2nd ed. 2016).
*746 ¶ 34 In the over eighteen years since the enactment of the "minus wine" provision, the legislature certainly could have acted to amend the law if it thought the commentators' understanding was incorrect. However, it did not override the governor's veto in 1999, and it has remained silent in the intervening years.
¶ 35 As the Seventh Circuit aptly observed in its certification, there is "no express statutory language" supporting the Distributors' position. See Winebow, 867 F.3d at 869. Cross references to their preferred definition were removed from Wis. Stat. § 135.066 by Governor Thompson's partial veto. Following that veto, what remains is unambiguous in its effect to exclude wine from the definition of "intoxicating liquor."
¶ 36 Instead of giving effect to ch. 135's single definition of "intoxicating liquor," the Distributors would have the court follow a path through ch. 125 to arrive at their preferred definition. The Distributors' circuitous route begins at Wis. Stat. § 135.02(3)(b), which references the definition of "wholesaler" from § 125.02(21). Pursuant to § 125.02(21), " '[w]holesaler' means a person, other than a brewer, brewpub, manufacturer, or rectifier, who sells alcohol beverages to a licensed retailer or to another person who holds a permit to sell alcohol beverages at wholesale." We are then directed to § 125.02(1), which defines "alcohol beverages" as "fermented malt beverages and intoxicating liquor." Finally, moving to § 125.02(8), we arrive at the definition of "intoxicating liquor" as including "vinous liquors," more commonly known as wine.
¶ 37 Our interpretation gives effect to the sole definition of "intoxicating liquor" located in ch. 135, one which is located in a statutory section beneath the *747 heading, "Intoxicating liquor dealerships." If the court here were to decide that it is acceptable to effectuate a definition from ch. 125 that is not referenced within ch. 135, there would be no clear stopping point to such a practice.
¶ 38 In sum, we conclude that a wine grantor-dealer relationship is not included within the definition of a dealership in Wis. Stat. § 135.02(3)(b). Wisconsin Stat. § 135.066(2) provides the operative definition of "intoxicating liquor" for purposes of Wis. Stat. ch. 135, and such definition explicitly excludes wine.
¶ 39 Accordingly, we answer the certified question in the negative and remand the cause to the United States Court of Appeals for the Seventh Circuit.
By the Court. -Certified question answered in the negative and cause remanded to the United States Court of Appeals for the Seventh Circuit.

All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

The governor's partial veto power arises from Article V, § 10 of the Wisconsin Constitution, which sets forth, "Appropriation bills may be approved in whole or in part by the governor, and the part approved shall become law." Wis. Const. art. V, § 10 (1)(b). Pursuant to the partial veto power, the governor may strike out language in an appropriation measure, but may not add language. See State ex rel. Wisconsin Senate v. Thompson, 144 Wis. 2d 429, 437, 424 N.W.2d 385 (1988) ; State ex rel. Kleczka v. Conta, 82 Wis. 2d 679, 707-08, 264 N.W.2d 539 (1978).
The partial veto power was originally a very broad power, but has been subsequently limited. Originally, the governor could "veto individual words, letters and digits, and also may reduce appropriations by striking digits, as long as what remains after veto is a complete, entire, and workable law." Wisconsin Senate, 144 Wis. 2d at 437, 424 N.W.2d 385.
A 1990 amendment slightly limited the power, dictating that "the governor may not create a new word by rejecting individual letters in the words of the enrolled bill."Wis. Const. art. V, § 10 (1)(c) (1990). This was the version in effect when Governor Thompson exercised the veto at issue in this case. A subsequent revision in 2008 brought Article V, § 10 to its present form, further limiting the partial veto power by stating that "the governor may not create a new word by rejecting individual letters in the words of the enrolled bill, and may not create a new sentence by combining parts of 2 or more sentences of the enrolled bill." Wis. Const. art. V, § 10 (1)(c).

The governor's veto with respect to Wis. Stat. § 135.02(3)(b) was as follows:
A contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons by which a wholesaler, as defined in s. 125.02(21), is granted the right to sell or distribute intoxicating liquor, as defined in s. 125.02(8), or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol related to intoxicating liquor. This paragraph does not apply to dealerships described in s. 135.066(5)(a) and (b).

Observe that the words "minus" in Wis. Stat. § 135.066(2)(a), formerly subsection (2)(b) in draft legislation, and "wine" in former subsection (2)(d) are left unscathed:
(2) DEFINITIONS. In this section:
(a) "Intoxicating liquor" has the same meaning given in s. 125.02(8).
(b) "Net revenues" means the gross dollar amount received from the sale of intoxicating liquor minus adjustments for returns, discounts and allowances.
(c) "Wholesaler" has the meaning given in s. 125.02(21).
(d) " Wine "has the meaning given in 125.02(22).
(3) LIABILITY OF TRANSFEREE OF INTOXICATING LIQUOR GRANTOR.
(a) In this subsection:
1. "Goodwill" includes the use of a trademark, trade name, logotype or other commercial symbol, and the use of a variation of a trademark, trade name, logotype, advertisement or other commercial symbol.
2. "Transferee" means a person who acquires any asset or activity of a grantor's intoxicating liquor business and who uses the goodwill associated with the intoxicating liquor of the grantor.
(b) A transferee shall be bound by each of the grantor's dealerships with the grantor's wholesalers and consequently shall be considereda grantor for the purposes of, and shall comply with, the requirements of this chapter.
(4) CHANGE IN OWNERSHIP.
(a) In this subsection, "successor wholesaler" means a wholesaler who succeeds to the management, ownership or control of a wholesaler or wholesaler's business or any part of a wholesaler's business by any means including by stock purchase, sale of assets or transfer or assignment of a brand of intoxicating liquor that is the subject of a dealership agreement.
(b) A change in the management, ownership or control of a wholesaler, a wholesaler's business or any part of a wholesaler's business is not good cause for a grantor to terminate, cancel, fail to renew or substantially change the competitive circumstances of its dealership with a successor wholesaler if the successor wholesaler meets the grantor's reasonable and material qualifications for wholesaler applicants in effect at the time of the change. If the successor wholesaler meets the grantor's reasonable and material qualifications for wholesaler applicants in effect at the time of the change, the successor wholesaler shall succeed to the dealership rights of the predecessor wholesaler and the grantor shall continue to be bound by the dealership.

In this section, the partial veto was as follows:
(5) NONAPPLICABILITY. This section does not apply to any of the following dealerships:
(a) Dealerships in which a grantor, including any affiliate, division or subsidiary of the grantor, has never produced more than 200,000 gallons of intoxicating liquor in any year.
(b) Dealerships in which the dealer's net revenues from the sale of all of the grantor's brands of intoxicating liquor, except wine, constitute less than 5% of the dealer's total net revenues from the sale of intoxicating liquor, except wine, during the dealer's most recent fiscal year preceding a grantor's cancellation or alteration of a dealership and the dealer's net revenues from the sale of all of the grantor's brands of wine constitute less than 5% of the dealer's total net revenues from the sale of wine during the dealer's most recent fiscal year preceding a grantor's cancellation or alteration of a dealership.

"In pari materia" refers to statutes and regulations relating to the same subject matter or having a common purpose. In re Jeremiah C., 2003 WI App 40, ¶ 17, 260 Wis. 2d 359, 659 N.W.2d 193. The statutory construction doctrine of in pari materia requires a court to read, apply, and construe statutes relating to the same subject matter together. Id.

The dissent asserts that "[t]he definition of intoxicating liquor in § 135.066 retains a function even if limited to its specific section of ch. 135." Dissent, ¶ 50. According to the dissent, "[i]t applies to the legislative findings of sub. (1), the non-applicability provisions of sub. (5), and the severability part of sub. (6). Id. But if the "minus wine" definition applies within § 135.066 only, what is its actual effect? The legislative findings are mere background and define no substantive rights. Further, as the Seventh Circuit correctly recognized in its certification, none of the other provisions of § 135.066 is affected by the "minus wine" language of sub. (2). See Winebow, Inc. v. Capitol-Husting Co., Inc., 867 F.3d 862, 868 (7th Cir. 2017). The dissent's interpretation thus renders the "minus wine" language superfluous.

Stated differently, to read the statute to include wine would render "minus wine" mere surplusage, a result that must be avoided. See Milwaukee Cty. v. Dep't of Indus., Labor and Human Relations Comm'n, 80 Wis. 2d 445, 452-53, 259 N.W.2d 118 (1977) (quoting Cook v. Indus. Comm'n, 31 Wis. 2d 232, 239-40, 142 N.W.2d 827 (1966) ("[S]tatutes should be so construed that no word or clause shall be rendered surplusage.") ).

In his veto message, Governor Thompson was explicit regarding the reasons for his partial veto: "I am partially vetoing these provisions so that wine will be excluded from treatment under these changes to the Wisconsin Fair Dealership Law because I object to wine being treated the same as intoxicating liquor." Governor's Veto Message, Act 9, at § F.4 (Oct. 27, 1999); see State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 51, 271 Wis. 2d 633, 681 N.W.2d 110 ("legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation").