HRUZ, J.
¶ 1 Nicholas Wegner appeals a judgment of conviction for fifth-offense operating a motor vehicle with a prohibited alcohol concentration (PAC), as well as an order denying his motion seeking reconsideration of a suppression decision.[1] Wegner drove into a roundabout directly in front of a deputy sheriff who was already driving within that roundabout, requiring the officer to brake to avoid a collision. Wegner was stopped for a failure to yield the right-of-way, whereupon the deputy collected evidence showing that Wegner had been driving with a PAC.
¶ 2 Wegner initially argues the circuit court was required to grant his suppression motion because, under State v. Longcore , 226 Wis. 2d 1, 594 N.W.2d 412 (Ct. App. 1999), aff'd , 233 Wis. 2d 278, 607 N.W.2d 620, the arresting officer lacked probable cause to believe that a traffic violation had occurred. We reject this argument because in State v. Houghton , 2015 WI 79, 364 Wis. 2d 234, 868 N.W.2d 143, our supreme court clarified that "reasonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops." Id. , ¶ 30. Indeed, Wegner effectively concedes in his reply brief that Hougton sets forth the operative standard.
¶ 3 We conclude that the deputy's observations here satisfied the "reasonable suspicion" standard. Wegner argues he could not be lawfully stopped because the deputy had forfeited the right-of-way by traveling at an unlawful speed through the roundabout. However, WIS. STAT. § 346.18(1) (2015-16)[2] -the statutory subsection to which Wegner cites in support of his argument-is inapt, and we conclude that a roundabout effectively functions as an uncontrolled "T" intersection under § 346.18(3m) for purposes of drivers yielding the right-of-way. Additionally, under § 346.18(6), Wegner was required to obey the posted yield signs at the roundabout entrance and yield to any traffic already within the roundabout. Under both statutory provisions, the deputy's observations were sufficient to justify stopping Wegner for failing to yield the right-of-way. Consequently, we affirm the denial of Wegner's suppression motion and the denial of his reconsideration motion.
BACKGROUND
¶ 4 The single charge of operating with a PAC was based upon an encounter between Wegner and deputy Trevor Coleman of the Calumet County Sheriff's Department. According to Coleman's testimony at the suppression hearing, while on patrol in his squad car at approximately 6:14 p.m. on December 13, 2016, he approached a roundabout at the intersection of Highways 10 and 55 in Calumet County. Coleman entered the roundabout and a truck, later determined to be driven by Wegner, pulled into the roundabout directly in front of him, ignoring posted yield signs. Coleman testified that if he had not applied his brakes, he would have hit Wegner's vehicle. After Wegner entered the roundabout, both driver's side wheels of Wegner's truck mounted the center roundabout embankment. Based on his observations-in particular those regarding Wegner's failure to yield to him-Coleman initiated a traffic stop.[3] Coleman testified he was not aware of any law that prohibited a driver's vehicle from partially operating on a roundabout's center embankment, and he did not pull Wegner over on that basis.
¶ 5 Wegner filed a motion to suppress evidence of his blood alcohol content, alleging Coleman lacked reasonable suspicion to perform a traffic stop. At the motion hearing, the State argued the stop was justified because Wegner clearly failed to yield to Coleman, who was already present in the roundabout and had the right-of-way. Wegner, on the other hand, argued that Coleman had forfeited the right-of-way by traveling in excess of fifteen miles per hour while in the roundabout. However, Wegner's attorney acknowledged he was unsure of the speed limit within the roundabout, and the circuit court denied the suppression motion.
¶ 6 Wegner then filed a motion for reconsideration supplemented by an affidavit from his attorney. His attorney averred that he had traveled through the roundabout in question, where there was a "clearly posted" speed limit of fifteen miles per hour. Citing Coleman's testimony at the suppression hearing that he had been traveling between eighteen and twenty miles per hour while in the roundabout, Wegner asserted that Coleman had forfeited the right-of-way by operation of WIS. STAT. § 346.18(1). On this basis, Wegner argued the traffic stop was unlawful.
¶ 7 In response, the State contended the speed limit signs observed by Wegner's counsel at the roundabout were merely advisory warning plaques and were not regulatory speed limit signs. According to the State, the square fifteen-mile-per-hour plaque merely supplemented a diamond-shaped cautionary roundabout sign that was located immediately above it. Following a hearing, the circuit court agreed with the State and found that Coleman was not driving at an unreasonable, imprudent, or otherwise unlawful speed so as to forfeit the right-of-way, thereby providing him reasonable suspicion to stop Wegner for having failed to lawfully yield the right-of-way. Wegner now appeals.
DISCUSSION
¶ 8 Wegner challenges the legality of the traffic stop, and he argues the circuit court erroneously denied his motion to suppress all evidence derived from the stop. The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures," and there is no dispute that Wegner was "seized" when Coleman effectuated the traffic stop. See Berkemer v. McCarty , 468 U.S. 420, 436-37 (1984). However, the parties dispute the standard by which to measure whether the stop was constitutionally reasonable.
¶ 9 Contrary to his position before the circuit court, Wegner now argues in his brief-in-chief that the State was required to establish probable cause for the traffic stop, not merely reasonable suspicion. Wegner relies on Longcore for this proposition, but Longcore was expressly overruled by Houghton . In Houghton , our supreme court concluded "that reasonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops." Houghton , 364 Wis. 2d 234, ¶ 30. Wegner's reply brief appears to concede that Houghton sets forth the correct standard.
¶ 10 With the proper legal standard established, we turn to the arguments here. Wegner claims that Coleman lacked reasonable suspicion to stop him based on Coleman's belief that Wegner had failed to yield the right-of-way. This is so, Wegner claims, because Coleman had already forfeited that right-of-way, pursuant to WIS. STAT. § 346.18(1), by driving his squad car "at an unlawful speed." Subsection (1) contains the general rule for yielding at intersections, and it states in relevant part:
[W]hen 2 vehicles approach or enter an intersection at approximately the same time, the operator of the vehicle on the left shall yield the right-of-way to the vehicle on the right. The operator of any vehicle driving at an unlawful speed forfeits any right-of-way which he or she would otherwise have under this subsection.
Wegner argues that this subsection applies to intersections controlled by roundabouts, and that Coleman was driving at an unlawful speed, thereby forfeiting the right-of-way.
¶ 11 Whether a defendant's constitutional rights were violated is a question of constitutional fact, which we review using a two-step standard of review. Houghton , 364 Wis. 2d 234, ¶ 18. We will uphold a circuit court's findings of historical fact unless they are clearly erroneous. Id. However, the ultimate determination of whether there was reasonable suspicion justifying a traffic stop is a question of law that we review de novo. Id. Wegner's arguments also implicate the proper interpretation of WIS. STAT. § 346.18. Statutory interpretation presents a question of law we review independently. Winebow, Inc. v. Capitol-Husting Co. , 2018 WI 60, ¶ 23, 381 Wis. 2d 732, 914 N.W.2d 631.
¶ 12 As noted, Wegner's position that he was not required to yield to Coleman, who was already present in the roundabout, flows from his assertion that the roundabout is an intersection governed by WIS. STAT. § 346.18(1). However, we agree with the State's assertion that a roundabout does not function as a standard intersection. Rather, traffic within a roundabout flows continuously in a counterclockwise direction. See WISCONSIN DEPARTMENT OF TRANSPORTATION, RULES FOR DRIVING ROUNDABOUTS 1, https://wisconsindot.gov/Documents/safety/safety-eng/roundabouts/rab-brochure.pdf (last visited Oct. 19, 2018). Drivers are to yield to traffic on their left already in the roundabout, and they should enter the roundabout only when there is a safe gap in traffic. Id. The unique characteristics of a roundabout are such that the general rule for intersections contained in § 346.18(1) seemingly does not apply.
¶ 13 In any event, even if WIS. STAT. § 346.18(1) applies to roundabouts, it does not control this case. The general rule requiring the driver on the left to yield the right-of-way triggers upon two vehicles approaching or entering an intersection at approximately the same time. The undisputed evidence here shows that Coleman was already operating within the roundabout at the time that Wegner approached and entered it. As a result, even assuming Coleman was driving at an unlawful speed, he was not required to yield the right-of-way to Wegner because he was already operating within the intersection first. The right-of-way forfeited under § 346.18(1) for unlawful speed is only that right granted by subsection (1) in the first instance-i.e., the driver on the right has the right-of-way to proceed first if two drivers arrive simultaneously at the intersection.
¶ 14 In addition, Wegner's argument lacks merit because the evidence established Coleman was not, in fact, driving at an unlawful speed. The circuit court correctly concluded that the square fifteen-mile-per-hour signs located near the roundabout were merely advisory in nature. According to the Wisconsin Manual on Uniform Traffic Control Devices, portions of which the State included in its response to Wegner's motion for reconsideration, signs displaying the speed limits established by law are generally known as "R2-1" signs. R2-1 signs are rectangular, generally black and white in color, and display the words "speed limit" followed by a numeral indicating the speed limit in multiples of five. Conversely, the plaque displayed beneath the roundabout sign here is known as a "W13-1P" sign, or an "advisory speed plaque." W13-1P plaques, which generally feature a black legend and border with a yellow background, "may be used to supplement any warning sign to indicate the advisory speed for a condition." Such plaques "shall only be used to supplement a warning sign and shall not be installed as a separate sign installation." Although Coleman was driving slightly in excess of the advisory speed, the circuit court specifically found that Coleman's speed was not reckless or unreasonable. See WIS. STAT. § 346.57(2). Wegner has given us no reason to question that factual finding.
¶ 15 Nevertheless, Wegner argues that his position regarding Coleman's "unlawful" speed is supported by the authored but unpublished opinion in County of Sheboygan v. Lane , No. 2010AP1756, unpublished slip op. (WI App Feb. 2, 2011).[4] In Lane , the defendant was stopped not for a failure to yield, but for driving too fast for conditions. Id. , ¶ 2. The officer in Lane testified that although fifteen miles per hour was merely the recommended speed for roundabouts, Lane was traveling at an estimated forty-five miles per hour through them. Id. The officer also characterized Lane's maneuvers within the roundabouts as akin to what a racer would perform around turns. Id. , ¶ 10. Finally, the officer testified that he felt he was unable to go through the roundabouts in a safe and efficient manner at the speed Lane was traveling. Id. Based on these facts, we concluded the officer was justified in stopping Lane. Contrary to Wegner's argument, we did not conclude the stop was justified because Lane exceeded a fifteen-mile-per-hour speed limit within the roundabouts, mandatory or otherwise.
¶ 16 We conclude that Coleman was entitled to the right-of-way, and Wegner was therefore required to yield, under two of WIS. STAT. § 346.18's other subsections.[5] First, we agree with the State's assertion that a roundabout effectively functions as an uncontrolled "T" intersection, which is governed by § 346.18(3m). Subsection (3m) dictates that the operator of a vehicle approaching an intersection on a highway that terminates at the intersection must yield the right-of-way to any vehicle approaching the intersection on a highway that continues through the intersection.
¶ 17 Like drivers at uncontrolled "T" intersections, drivers approaching roundabouts meet a point at which they must yield and where they can no longer travel straight due to the existence of the center embankment. Thus, the driver's road effectively "terminates" upon his or her first reaching the roundabout. Also, like vehicles approaching a "T" intersection on highways that continue through that intersection, vehicles that have already entered the roundabout "continue through" the intersection unless and until they exit it. Even though this "continuing" is not done in a straight-line fashion, it is sufficiently analogous to the manner in which vehicles navigate roads that continue through a "T" intersection. Stated more directly, WIS. STAT. § 346.18(3m), as rationally applied to roundabouts, requires the operator of a vehicle approaching the roundabout to yield to drivers already operating within the roundabout. While we recognize that subsection (3m) may not be a perfect analogy, the legislature has not provided a statute that directly addresses the required general behaviors of drivers encountering roundabouts. Our conclusion is necessarily based upon the existence of available statutes that most reasonably cover the circumstances present here.
¶ 18 Second, the testimony at the suppression hearing established that there were posted yield signs at the roundabout entrance where Wegner entered. Under WIS. STAT. § 346.18(6), the operator of a vehicle approaching an intersection with a yield sign "shall yield the right-of-way to other vehicles which have entered the intersection from the intersecting highway or which are approaching so closely on the intersecting highway as to constitute a hazard of collision and, if necessary, shall reduce speed or stop in order to so yield." Under either subsection (3m) or (6), Wegner was required to yield the right-of-way to Coleman. His failure to yield was therefore a valid basis for a traffic stop, and the circuit court properly denied Wegner's suppression motion.
By the Court. -Judgment and orders affirmed.
Not recommended for publication in the official reports.

Although Wegner's notice of appeal states he is appealing the circuit court's order to stay his sentence pending appeal, he presents no argument regarding that order. We therefore do not address it further. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

A video recording of the incident from Coleman's squad car was played at the suppression hearing. The disc containing the recording, which was marked as "Exhibit 1" at the hearing, was omitted from the appellate record. Upon discovering the omission, Wegner's attorney filed a motion with this court to supplement the appellate record to include the disc. That motion was granted.
In urging this court to reject the circuit court's findings of fact, Wegner suggests that we "review the Video of the stop ... to make a determination of clear error." Upon this court's review of the disc, it does not appear to contain the camera footage introduced at the suppression hearing. On the disc is written "WEGNER OWI 5TH" and "DEPUTY HEDERER." Although the disc contains a large number of files, the only playable video file appears to be footage from the dashboard camera of a second squad car to arrive at the scene. There does not appear to be a recording of deputy Coleman's initial encounter with Wegner.
Wegner improperly cites generally to Exhibit 1 and does not describe how to locate the footage from Coleman's camera on the disc, if it in fact exists on that medium. To the extent the footage is not included on the disc, we observe it was Wegner's responsibility to ensure a complete appellate record and any missing material will be assumed to support the circuit court's determination. See Fiumefreddo v. McLean , 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993). If the footage is somewhere available to us in the appellate record, Wegner's record citations are insufficient to allow us to locate and review it. See Roy v. St. Lukes Med. Ctr. , 2007 WI App 218, ¶ 10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256 ("We have no duty to scour the record to review arguments unaccompanied by adequate record citation."). We therefore reject his arguments concerning the circuit court's allegedly erroneous factual findings, all of which arguments are based upon Wegner's request that this court view the footage from Coleman's squad car.

Authored but unpublished opinions issued after July 1, 2009, may be cited in this court only for their persuasive value. Wis. Stat. Rule 809.23(3)(b).

Subsection (8) of Wis. Stat. § 346.18 specifically concerns roundabouts. That subsection, however, addresses yielding the right-of-way to large vehicles. It was enacted by the legislature in recognition of the special safety challenges posed by commercial trucks and other vehicles. See 2015 Wis. Act 139; Wisconsin Department of Transportation, How roundabouts work , https://wisconsindot.gov/Pages/safety/safety-eng/roundabouts/works.aspx (last visited Oct. 22, 2018).
Wegner suggests in his reply brief that he was seized for a suspected violation of Wis. Stat. § 346.18(8). However, his argument on this point is undeveloped, and we will not consider it. See Pettit , 171 Wis. 2d at 646. Moreover, Wegner takes liberties with the record in suggesting that subsection (8) provided the basis for the stop here. Coleman acknowledged at the suppression hearing that he issued Wegner a warning for failing to yield the right-of-way. Wegner's attorney then mentioned subsection (8), to which Coleman merely responded, "Okay."