COURT OF APPEALS
DECISION
DATED AND FILED

August 6, 2019

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP1167**

**STATE OF WISCONSIN**

Cir. Ct. No. **2017TR1318**

**IN COURT OF APPEALS
DISTRICT III**

COUNTY OF DUNN,

    PLAINTIFF-RESPONDENT,

    V.

CASHE L. NEWVILLE,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Dunn County: ROD W. SMELTZER, Judge. *Affirmed*.

¶1    SEIDL, J.[1] Cashe Newville appeals an order that adjudged him guilty of first-offense operating while under the influence of a controlled substance (OWI), contrary to WIS. STAT. § 346.63(1)(a). He contends the circuit

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

court erred by denying his motion to suppress the results of an evidentiary chemical test of his blood. We reject Newville's arguments and conclude the court properly denied his suppression motion. We therefore affirm.

## BACKGROUND

¶2 Dunn County sheriff's deputy Brandon Scott stopped a vehicle operated by Newville on February 17, 2017, and ultimately arrested Newville for OWI. Newville consented to an evidentiary chemical test of his blood. However, he subsequently moved to suppress the results of the blood test, arguing Scott lacked: (1) reasonable suspicion to conduct a traffic stop of Newville's vehicle; (2) reasonable suspicion to administer field sobriety tests; (3) probable cause to administer a preliminary breath test; and (4) probable cause to arrest Newville for OWI.

¶3 Scott was the only witness to testify at the hearing on Newville's suppression motion. The following facts are taken from his testimony and from our review of a dashboard camera video of the stop, which was played for the circuit court during the suppression hearing.

¶4 At approximately 10:40 p.m. on February 17, 2017, Scott was on patrol driving eastbound on Highway 12 in Dunn County. He observed a vehicle—whose driver was later identified as Newville—traveling westbound on Highway 12. Using his radar unit, Scott discerned that Newville's vehicle was traveling at a rate of forty-seven miles-per-hour in a fifty-five-miles-per-hour zone. After the two vehicles passed each other, Scott looked behind him and noticed that the license plate lamps on the back of Newville's vehicle were inoperable.

¶5 Scott turned his vehicle around and began following Newville. He noted that the speed of Newville's vehicle fluctuated between forty and forty-seven miles-per-hour, which he found suspicious given the speed limit of fifty-five miles-per-hour. He continued to follow Newville's vehicle as it turned onto 690th Avenue. As the vehicle traveled down 690th Avenue, Scott saw it "operating over the centerline or over the center of the roadway multiple times."[2] Scott then activated his emergency lights and stopped Newville's vehicle.

¶6 After approaching Newville's vehicle and asking him for identification, Scott questioned Newville about his slower-than-normal speed. Newville responded that Scott's headlights had been bothering him. Scott then asked Newville where he was going, and Newville responded that he was "heading home" to the Village of Knapp. When Scott pointed out that Newville's route was not the fastest way to get to the Village of Knapp, Newville again stated that he had been trying to avoid Scott's headlights. Newville then confirmed that the license plates on his vehicle did not belong to that vehicle, stating he had just purchased the vehicle and the seller was not the vehicle's registered owner.

¶7 Newville then asked if Scott wanted him to get out of the car, and Scott stated Newville could do so. When Newville opened his door, Scott noticed a "torch lighter" in the vehicle's driver's side compartment. Scott testified that item raised his suspicions because torch lighters "are commonly used with methamphetamine use." Scott then questioned Newville about his prior drug use. Newville stated he would be reporting to jail that Sunday on a charge of

---

[2] Scott later clarified—and the dashboard camera video confirms—that there is no painted centerline on the relevant section of 690th Avenue.

possession of a methamphetamine pipe. He told Scott he had last used methamphetamine two months before the stop.

¶8 Scott then asked Newville, "Would you mind sticking out your tongue for me?" Newville did so, and Scott noticed a yellow film on the back of Newville's tongue. Based on his training and experience, Scott believed that yellow film was an indicator of methamphetamine use.

¶9 Thereafter, Scott had Newville perform a series of field sobriety tests. Scott did not observe any clues of intoxication on the horizontal gaze nystagmus (HGN) test or the one-leg stand test. However, Scott observed four clues of intoxication when Newville attempted to complete the walk-and-turn test. Scott also asked Newville to recite the alphabet, which Newville was unable to do successfully. In addition, Newville was unable to count backwards from fifty-four to thirty-six.

¶10 Scott also asked Newville to perform the Romberg test. He instructed Newville to tilt his head back, close his eyes, and tell Scott when he believed thirty seconds had passed. The first time Newville performed the Romberg test, he estimated that thirty seconds had passed after only three seconds. The second time Newville performed the test, he estimated thirty seconds had passed after six seconds.

¶11 At the suppression hearing, Scott testified he had observed individuals who were under the influence of alcohol or other drugs on numerous occasions, and he believed at the time of the stop that Newville was "under the influence of something." He therefore requested a preliminary breath test, which did not detect the presence of any alcohol in Newville's system.

¶12    Following the preliminary breath test, Scott again asked Newville when he had last used methamphetamine.  Newville responded that he had used methamphetamine one week before the stop, and methamphetamine would therefore "show up" on a test of his blood.  After being informed that a blood test would not show methamphetamine use from one week prior, Newville stated he had used methamphetamine five days before the stop.  He reiterated that he believed his blood would test positive for methamphetamine.  Scott then placed Newville under arrest for OWI.

¶13    On cross-examination during the suppression hearing, Scott conceded that Newville was cooperative during the traffic stop; that he was honest about his license plate lamps being out and his vehicle's lack of registration; that he did not fall or lose his balance when exiting his vehicle; and that he appropriately followed Scott's commands.  Scott also conceded that he did not smell any alcohol on Newville.  In addition, Scott conceded that he had not been trained as a drug recognition expert.  Scott further admitted that the alphabet test and the counting backwards test are not standardized field sobriety tests, unlike the HGN, the one-leg stand, and the walk-and-turn tests.

¶14    The circuit court denied Newville's suppression motion.  Although the court agreed that Newville's slower-than-normal speed and driving over the center of 690th Avenue were "suspicious" behaviors, it concluded the inoperable license plate lamps alone gave Scott reasonable suspicion to stop Newville's vehicle.  The court further concluded that Scott's observations during the stop gave him probable cause to arrest Newville for OWI.  After the court denied his suppression motion, Newville entered a no contest plea to the first-offense OWI charge.  Newville now appeals, challenging only the denial of his suppression motion.

**DISCUSSION**

¶15    When reviewing a circuit court's decision on a motion to suppress, we apply a two-step standard of review. *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. We will uphold the circuit court's factual findings unless they are clearly erroneous. *Id.* However, we independently review whether those facts violate constitutional principles. *Id.*

**I. Reasonable suspicion to conduct an impaired driving investigation**

¶16    "[A]n officer's reasonable suspicion that a motorist is violating or has violated a traffic law is sufficient for the officer to initiate a stop of the offending vehicle." *State v. Houghton*, 2015 WI 79, ¶5, 364 Wis. 2d 234, 868 N.W.2d 143. In determining whether reasonable suspicion existed, the "crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime" or traffic violation. *See State v. Post*, 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634. The officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion of the stop. *Id.*, ¶10. "The reasonableness of a stop is determined based on the totality of the facts and circumstances." *Id.*, ¶13.

¶17    Newville concedes on appeal that Scott had reasonable suspicion to stop his vehicle based on its inoperable license plate lamps. *See Houghton*, 364 Wis. 2d 234, ¶30 ("[R]easonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops."). He argues, however, that Scott lacked reasonable suspicion to expand the scope of the stop in order to conduct an impaired driving investigation. His argument in this regard misses the mark.

Based on the three factors discussed below, we conclude Scott already possessed reasonable suspicion that Newville was operating while intoxicated at the time he stopped Newville's vehicle.

¶18    First, while Newville was driving on Highway 12, Scott observed that his vehicle's speed was fluctuating between forty and forty-seven miles-per-hour—i.e., eight to fifteen miles-per-hour below the speed limit.  A driver's "noticeably-slower-than-the-speed-limit driving is a specific and articulable factor supporting reasonable suspicion" that the driver may be impaired.  ***State v. Wheaton***, Nos. 2011AP1928 and 2012AP73-CR, unpublished slip op. ¶26 (WI App Oct. 25, 2012).[3]

¶19    Second, after Newville's vehicle turned onto 690th Avenue, Scott saw it "operating over the centerline or over the center of the roadway multiple times."  Our review of the dashboard camera video confirms that Scott's vehicle repeatedly crossed over the center of 690th Avenue.  This case is therefore similar to ***State v. Popke***, 2009 WI 37, ¶36, 317 Wis. 2d 118, 765 N.W.2d 569, in which our supreme court concluded an officer had reasonable suspicion that a defendant was operating while intoxicated when the defendant "was driving with three-quarters of the vehicle left of the center of the road; the vehicle then moved back into the proper lane but almost hit the curb; [and] the defendant's vehicle then faded back towards the middle of the road and nearly struck the median."  Elsewhere, this court has similarly concluded that deviations outside of a driver's lane can give rise to reasonable suspicion of intoxicated driving.  *See, e.g.*, ***State v.***

---

[3] An authored, unpublished opinion issued on or after July 1, 2009, may be cited for its persuasive value.  WIS. STAT. RULE 809.23(3)(b).

*Wegener*, No. 2010AP452-CR, unpublished slip op. ¶¶6-7 (WI App Aug. 18, 2010); *County of Milwaukee v. Manske*, No. 2009AP1779, unpublished slip op. ¶16 (WI App June 8, 2010).

¶20    Third, the stop in this case occurred at approximately 10:40 p.m.  In ***Post***, our supreme court deemed it relevant to the reasonable suspicion inquiry that the defendant's poor driving took place at 9:30 p.m.  ***Post***, 301 Wis. 2d 1, ¶36. The court explained, "While this is not as significant as when poor driving takes place at or around 'bar time,' it does lend some further credence to [the officer's] suspicion that [the defendant] was driving while intoxicated." ***Id.***  Similarly, in this case, the fact that Newville's suspicious driving behaviors occurred at around 10:40 p.m. gave further support to Scott's suspicion that Newville was driving while impaired.

¶21    Based on factors discussed above, we conclude Scott already had reasonable suspicion to believe that Newville was operating while intoxicated at the time he stopped Newville's vehicle.  Accordingly, Scott did not impermissibly expand the scope of the stop by conducting an impaired driving investigation.

## II. Reasonable suspicion to administer field sobriety tests

¶22    Newville next argues that Scott lacked reasonable suspicion to administer field sobriety tests.  *See **Village of Little Chute v. Rosin***, No. 2013AP2536, unpublished slip op. ¶17 (WI App Feb. 25, 2014) ("[A]n officer must have reasonable suspicion that the driver is impaired before requesting field sobriety tests.").  We disagree.

¶23    As discussed above, Scott had reasonable suspicion that Newville was operating while intoxicated even before the stop based on: (1) Newville's

slower-than-normal speed; (2) Newville's repeated deviations over the center of 690th Avenue; and (3) the time of night. During the stop, two additional facts came to light that further supported Scott's reasonable suspicion. First, Scott observed a torch lighter in the driver's side compartment of Newville's vehicle, which raised Scott's suspicion based on his prior knowledge that torch lighters "are commonly used with methamphetamine use." Second, when questioned by Scott about prior drug use, Newville admitted that he had used methamphetamine two months before the stop. We conclude these facts—combined with the facts that were known to Scott at the time of the stop—gave rise to a reasonable suspicion that Newville was operating under the influence and therefore justified the administration of field sobriety tests.

¶24 In his appellate briefs, Newville makes much of the fact that Scott asked Newville to stick out his tongue before administering field sobriety tests. Scott noticed a yellow film on the back of Newville's tongue, and based on his training and experience, he believed that film was an indicator of methamphetamine use. Newville contends that by asking to look at his tongue, Scott conducted an unconstitutional warrantless search of Newville's person. He therefore argues the yellow film that Scott observed "must be ignored" and "cannot be used to justify the administration of field sobriety tests, the arrest, or the preliminary breath test."

9

¶25 We need not resolve whether Scott performed an unconstitutional warrantless search by asking Newville to stick out his tongue.[4] Even ignoring Scott's testimony regarding the yellow film on Newville's tongue, we conclude Scott had reasonable suspicion to administer field sobriety tests, for the reasons explained above. In addition, as discussed below, we conclude Scott had probable cause to administer a preliminary breath test and to arrest Newville for OWI, even absent his observation of the yellow film on Newville's tongue. As a result, we need not further address Newville's argument that Scott's request to see his tongue was an unconstitutional warrantless search.[5]

---

[4] Scott's search of Newville's tongue may have been constitutionally permissible under the consent exception to the warrant requirement. *See* ***State v. Artic***, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430. However, Dunn County does not develop any argument that the consent exception is applicable here, and we will not abandon our neutrality to develop that argument for Dunn County. *See* ***Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

[5] As noted above, Newville initially argues that because of the allegedly unconstitutional search, the yellow film that Scott observed on his tongue "must be ignored" and "cannot be used to justify the administration of field sobriety tests, the arrest, or the preliminary breath test." However, Newville later makes a single-sentence argument that because the search of his tongue was unconstitutional, "all evidence gathered as a result of the search must be suppressed." In support of that assertion, Newville cites ***Wong Sun v. United States***, 371 U.S. 471 (1963), and ***State v. Knapp***, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899, without any explanation or elaboration.

Both ***Wong Sun*** and ***Knapp*** deal with the fruit of the poisonous tree doctrine. *See* ***Wong Sun***, 371 U.S. at 485-88; ***Knapp***, 285 Wis. 2d 86, ¶24. Aside from citing these cases, however, Newville does not develop any argument that the fruit of the poisonous tree doctrine applies in this case and requires the exclusion of all evidence gathered following the allegedly unconstitutional search of his tongue. Again, we will not abandon our neutrality to develop arguments for a party. *See* ***Industrial Risk Insurers***, 318 Wis. 2d 148, ¶25. As such, we decline to further address Newville's contention that all evidence gathered following the search of his tongue must be suppressed. *See* ***State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments).

### III. Probable cause to administer a preliminary breath test

¶26    Newville next argues that Scott lacked probable cause to administer a preliminary breath test.   WISCONSIN STAT. § 343.303 permits an officer to request a preliminary breath test if he or she has "probable cause to believe" that a person was operating while intoxicated.   The statutory term "probable cause to believe" "refers to a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop … but less than the level of proof required to establish probable cause for arrest."   *County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999).

¶27    In this case, we agree with Dunn County that Scott had probable cause to believe Newville was operating while intoxicated and could therefore administer a preliminary breath test.  At the time Scott requested the preliminary breath test, he was aware that Newville had been driving at a lower-than-normal speed at approximately 10:40 p.m. and had crossed the center of 690th Avenue multiple times.  Scott was also aware that Newville had a torch lighter in the front passenger compartment of his car, which Scott testified was commonly associated with methamphetamine use, and that Newville had admitted using methamphetamine two months before the stop.

¶28    In addition to these facts, Scott was also aware that Newville had failed several field sobriety tests.  Scott observed four clues of intoxication when Newville attempted to complete the walk-and-turn test.  Newville was also unable to recite the alphabet and could not count backwards from fifty-four to thirty-six. Further, when Newville performed the Romberg test, he initially estimated that thirty seconds had passed after only three seconds, and then after only six seconds. Newville's performance on these field sobriety tests, when combined with the

other facts discussed above, was sufficient to create probable cause to believe that Newville was operating while intoxicated, as required for the administration of a preliminary breath test.

¶29     Newville argues the results of the field sobriety tests cannot be used to support probable cause to administer a preliminary breath test because all of the field sobriety tests except the Romberg test "measured for alcohol impairment, which [Scott] did not suspect Newville of." We reject this argument for two reasons.

¶30     First, Scott never testified that he did not suspect Newville of alcohol impairment. Rather, he testified he suspected that Newville was "under the influence of something."

¶31     Second, while Scott testified that a drug recognition expert performs "a different battery of field sobriety tests than you would do in the case where you suspect someone of alcohol consumption," and that those tests "are designed to measure narcotics and other drugs" rather than alcohol, he never testified that the field sobriety tests he administered in this case cannot be used to detect drug impairment. Notably, Newville does not cite any legal authority supporting the proposition that the field sobriety tests Scott administered can only be used to detect alcohol impairment. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address arguments unsupported by references to legal authority). Moreover, at least one of our prior opinions has rejected Newville's argument that field sobriety tests traditionally associated with alcohol impairment cannot also be used to support probable cause that the defendant was operating under the influence of drugs. *See State v. Mueller*, No. 2018AP44-CR, unpublished slip op. ¶¶5, 20 (WI App Feb. 12, 2019)

(rejecting the defendant's argument that the field sobriety tests in that case—the walk-and-turn and one-leg stand tests—were "of limited probative value" for drug impairment because they were "designed to detect impairment from alcohol").

¶32    Newville next argues that the results of the field sobriety tests did not give rise to probable cause for a preliminary breath test because two of the tests that indicated impairment—the alphabet test and the counting backwards test—are not standardized field sobriety tests.  Again, however, Newville fails to cite any legal authority in support of his claim that a defendant's performance on nonstandardized field sobriety tests may not be considered when determining whether an officer had probable cause to believe the defendant was operating while impaired.  We therefore reject his argument in that regard.  *See Pettit*, 171 Wis. 2d at 646.

¶33    Newville also argues that his performance on the Romberg test could not be used to support probable cause for a preliminary breath test because evidence concerning the result of that test "requires qualified expert testimony." Newville contends Scott could not provide such testimony because he was not trained or certified as a drug recognition expert.  Once again, however, Newville fails to cite any legal authority supporting his claim that only a certified drug recognition expert may testify regarding a defendant's performance on the Romberg test. *See id.*

¶34    To the contrary, in *City of West Bend v. Wilkens*, 2005 WI App 36, ¶1, 278 Wis. 2d 643, 693 N.W.2d 324, we held that field sobriety tests "are not scientific tests.  They are merely observational tools that law enforcement officers commonly use to assist them in discerning various indicia of intoxication, the perception of which is necessarily subjective."  We further stated, "[I]t is not

beyond the ken of the average person to understand such indicia and to form an opinion about whether an individual is intoxicated." **Id.**  We agree with Dunn County that our reasoning in **Wilkens** is applicable to Scott's use of the Romberg test in this case, as "[a]sking a person to close their eyes [and] estimate the passing of thirty seconds is not a complicated test to administer," and Newville's performance on the Romberg test was "so woeful that [its] evidentiary value as to impairment [was] readily apparent."  We therefore reject Newville's argument that his performance on the Romberg test cannot be considered in determining whether Scott had probable cause to administer a preliminary breath test.

## IV.  Probable cause to arrest Newville for OWI

¶35     Finally, Newville argues Scott lacked probable cause to arrest him for OWI.  Warrantless arrests are not lawful except when supported by probable cause.  **State v. Lange**, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551. "Probable cause to arrest is the quantum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime." **State v. Secrist**, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999).

¶36     Here, the facts discussed above that gave rise to probable cause for a preliminary breath test also support a determination that Scott had probable cause to arrest Newville for OWI.  In addition to those facts, Newville admitted after the preliminary breath test that he had last used methamphetamine only one week before the stop, which was contrary to his prior admission that he had last used methamphetamine two months before the stop.  Newville subsequently admitted that he had actually used methamphetamine only five days before the stop.  In addition, Newville twice conceded following the preliminary breath test that

methamphetamine would "show up" on a test of his blood. These statements, in conjunction with the other facts discussed above, would have led a reasonable officer to believe that Newville had probably committed OWI. *See **Secrist***, 224 Wis. 2d at 212. As such, we reject Newville's argument that Scott lacked probable cause to arrest him.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.