COURT OF APPEALS
DECISION
DATED AND FILED

June 2, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP740-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF395

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRIAN C. TARKENTON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Dane County: SUSAN M. CRAWFORD, Judge. *Affirmed.*

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Brian Tarkenton, pro se, appeals a judgment of conviction for Operating While Intoxicated (OWI) as a seventh offense, an order denying his postconviction motion for plea withdrawal, and an order denying his motion for reconsideration.  Tarkenton contends that he is entitled to withdraw his plea because trial counsel was ineffective for not seeking to suppress evidence.  Tarkenton also asserts that he is entitled to an evidentiary hearing on his claim that counsel was ineffective for failing to identify a potential defense to the OWI charge.  For the reasons set forth in this opinion, we affirm.

¶2     The following facts are taken from the criminal complaint.  On August 21, 2018, at 5:42 p.m., Oregon police were dispatched to a residence to investigate a "suspicious person."  They were informed that an off-duty deputy had reported observing Tarkenton driving a vehicle and that the deputy believed that there was an "active warrant" for Tarkenton.  At 5:50 p.m., the officers arrived at the residence where the vehicle was parked and made contact with Tarkenton, who was walking in the driveway.  The officers detained Tarkenton and then observed signs that he was impaired.  A frisk led to the discovery of heroin in Tarkenton's possession.  The officers obtained a warrant for a blood draw, which revealed morphine, fentanyl, and oxycodone in Tarkenton's system.  Tarkenton was charged with possession of narcotics, OWI as a seventh offense, and operating while revoked.

¶3     Pursuant to a plea agreement, Tarkenton pled guilty to OWI as a seventh offense and the remaining counts were dismissed.  The court sentenced Tarkenton to four years of initial confinement and thirty months of extended supervision.

¶4      After sentencing, Tarkenton filed a motion to withdraw his plea. He argued that trial counsel had been ineffective for failing to challenge his initial detention as unlawful, and failing to challenge the warrant for the blood draw based on alleged falsities in the warrant application.

¶5      The circuit court held a ***Machner***[1] hearing on Tarkenton's claims of ineffective assistance of counsel, and it made the following findings based on the evidence presented at the hearing.[2] Officers were dispatched to respond to a report by an off-duty deputy about a "known wanted person driving suspiciously." The off-duty deputy provided a license plate number and vehicle description and identified Tarkenton as the driver. The off-duty deputy also advised that Tarkenton had "an active [probation and parole] warrant." The deputy reported that the vehicle was "turning around and going all different directions" before arriving at a residence.

¶6      The responding officers arrived at the residence, found the vehicle parked in the driveway, and made contact with Tarkenton. The officers had been searching for Tarkenton the week before because the Department of Corrections (DOC) had issued a warrant for him. The officers detained Tarkenton and advised him that they had information that Tarkenton had an active warrant. Tarkenton told the officers that he had talked with his DOC agent the day before and that the warrant had been dropped. The officers stated that they would check into the status of the warrant.

---

[1] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] The evidence at the ***Machner*** hearing included testimony by trial counsel and Tarkenton; the responding officers' police reports; police body camera footage; and a stipulation between the parties that the officers would have testified consistently with the exhibits.

¶7 While escorting Tarkenton to the police squad car to check on the status of the warrant, police observed that Tarkenton had "pinpoint pupils, was unsteady on his feet, was speaking in a slow and raspy manner, and had a 'droopy' face and eyes." The officers checked Tarkenton's records and did not find an active warrant, but they arrested Tarkenton for operating while intoxicated. The officers then obtained a search warrant for a blood draw.

¶8 The circuit court determined that counsel did not perform deficiently because a suppression motion would not have been likely to succeed. As to the initial detention, the court determined that the officers' belief that there was an active DOC hold warrant for Tarkenton was reasonable and provided grounds to detain him. The court found that the officers' belief was reasonable because it was based on their own knowledge of the warrant during a search for Tarkenton the prior week and the off-duty deputy's report that the DOC warrant was active. The court also determined that, in the process of checking Tarkenton's records, the officers observed signs that Tarkenton was impaired, which provided reasonable suspicion to continue detaining him.

¶9 As to the search warrant for the blood draw, the circuit court determined that Tarkenton failed to establish that the officer's testimony in support of the warrant was false in any material respect. It found that the sworn testimony that the off-duty deputy reported "odd driving movements" was consistent with police reports stating that the deputy reported that Tarkenton "keeps turning around and going all different directions." It rejected Tarkenton's claim that a different officer than the testifying officer had observed that Tarkenton had pinpoint pupils. Finally, it found that the police body camera footage supported the officer's sworn testimony that Tarkenton had pinpoint

4

pupils and was unsteady on his feet, and it therefore rejected Tarkenton's argument that the footage contradicted those statements.

¶10     Tarkenton filed a motion for reconsideration, in which he renewed his arguments challenging his initial stop and the warrant for the blood draw. He also argued that trial counsel had been ineffective for failing to identify a potential defense—specifically, that Tarkenton could argue that he had not ingested any drugs until after he finished driving. The circuit court denied the motion without holding a second *Machner* hearing. Tarkenton appeals.

¶11     We review a circuit court's decision on a claim of ineffective assistance of counsel as "mixed questions of law and fact." *State v. Pitsch*, 124 Wis. 2d 628, 634-35, 369 N.W.2d 711. We review the court's factual findings for whether they are clearly erroneous. *Id.* at 635. We independently review whether counsel's performance was deficient and whether the deficiency prejudiced the defendant. *Id.* We also independently review whether a claim of ineffective assistance of counsel is sufficient to require the circuit court to hold an evidentiary hearing. *See State v. Balliette*, 2011 WI 79, ¶18, 336 Wis. 2d 358, 805 N.W.2d 334.

¶12     Tarkenton contends that the circuit court erred by denying his claims of ineffective assistance of counsel following the *Machner* hearing. He contends that trial counsel should have moved to suppress evidence against him by arguing that his initial detention violated his Fourth Amendment rights, as did the search based on the warrant for a blood draw. *See State v. Felix*, 2012 WI 36, ¶30, 339 Wis. 2d 670, 811 N.W.2d 775 (evidence obtained as a result of a Fourth Amendment violation generally must be suppressed). We conclude that counsel was not ineffective for failing to pursue either suppression motion because nothing

before us indicates that either motion would have been successful. *See State v. Jackson*, 229 Wis. 2d 328, 344, 600 N.W.2d 39 (Ct. App. 1999) (failure to pursue a suppression motion is not ineffective assistance if the motion would not have succeeded).

¶13    Tarkenton contends that trial counsel should have challenged his initial detention on grounds that police lacked reasonable suspicion to detain him. *See State v. Vorburger*, 2002 WI 105, ¶74, 255 Wis. 2d 537, 648 N.W.2d 829 (an officer may "stop and briefly detain a person for investigative purposes" only "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'" (citation omitted)).  Tarkenton argues that the officers' belief that there was an active warrant for his arrest did not establish reasonable suspicion because, after he was detained, it was discovered that the warrant was no longer active.  He contends that the officers could have quickly verified that there was no active warrant for his arrest.  Tarkenton also contends that the police body camera footage does not support the police reports that he had slurred speech, pinpoint pupils, and an unsteady gait.  Thus, Tarkenton asserts, the facts do not establish reasonable suspicion to support his continued detention.

¶14    The State responds that police had reasonable suspicion to stop Tarkenton based on their reasonable belief that there was a warrant for his arrest, even though that belief was mistaken.  *See State v. Houghton*, 2015 WI 79, ¶43, 364 Wis. 2d 234, 868 N.W.2d 143 ("[A] search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake." (citation omitted)).  It argues that the officers' belief that there was a warrant was reasonable because the officers knew that the DOC had issued a warrant for Tarkenton and they had been looking for Tarkenton the week prior, and they received information from dispatch that an off-duty deputy reported that he

believed the DOC warrant was active. The State also argues that trial counsel's recommendation that Tarkenton accept the plea deal offered by the State rather than pursue a suppression motion was reasonable under the circumstances.

¶15 We conclude that Tarkenton has not established that trial counsel was ineffective by failing to pursue a suppression motion based on the initial stop, because he has not shown that such a motion would have had any likelihood of success. *See Jackson*, 229 Wis.2d at 344. It is settled law that an officer's mistake of fact, if objectively reasonable, may provide reasonable suspicion for a stop. *See Houghton*, 364 Wis. 2d 234, ¶45. Here, the responding officers had prior knowledge that there was a DOC warrant to apprehend Tarkenton the prior week, and received a report from dispatch that an off-duty officer reported that he had located Tarkenton and that he believed that the warrant for Tarkenton was active. Those facts established an objectively reasonable belief that there was an active warrant to apprehend Tarkenton, even though that belief was mistaken.

¶16 Moreover, we are not persuaded that the officers' belief was unreasonable because they had the ability to quickly check the status of the DOC warrant. The officers received information that Tarkenton was driving in an odd manner—that his vehicle was "going all different directions." The officers immediately responded to the residence where the vehicle was parked and made contact with Tarkenton. When, as here, officers have reasonable suspicion that falls short of probable cause for an arrest, they are not required to rule out possibly innocent explanations prior to briefly detaining an individual to investigate further. *See State v. Waldner*, 206 Wis. 2d 51, 58-59, 556 N.W.2d 681 (1996). Thus, the officers were justified in briefly detaining Tarkenton while checking the status of the warrant, which was within the scope of the detention. *See Rodriguez v. United*

*States*, 575 U.S. 348, 354-55 (2015) ("The scope of the detention must be carefully tailored to its underlying justification." (citation omitted)).

¶17     Nor are we persuaded by Tarkenton's argument that the officers lacked reasonable suspicion to continue detaining him based on evidence of intoxication. Contrary to Tarkenton's argument, the police body camera footage and the still photograph taken from the footage do not directly contradict the officers' reports that they observed Tarkenton's pinpoint pupils, unsteady gait, and unusual speech. We therefore conclude that a motion to suppress evidence based on a challenge to the legality of Tarkenton's detention would not have been likely to succeed.

¶18     Tarkenton also contends that trial counsel should have challenged the warrant for a blood draw on grounds that the warrant affidavit included statements that were knowingly or recklessly false. *See **Franks v. Delaware***, 438 U.S. 154, 164-65, 169-70 (1978). He contends that the following statements in the affidavit were false: that Tarkenton's voice was slurred; that Tarkenton's pupils were two millimeters; that the off-duty deputy observed Tarkenton make "odd driving movements"; and that Tarkenton was unable to stand on his own and was staggering. Tarkenton contends that those statements are either not supported by the police reports or contradicted by the police body camera footage and the still photograph taken from the footage. He also argues that the statement that Tarkenton was "making odd driving movements" was not supported by the police report and that a different officer than the testifying officer reported seeing that Tarkenton had pinpoint pupils.

¶19     We reject this argument. The circuit court found that the police body camera footage supported the statements in the warrant affidavit, and

Tarkenton has not shown that the court's findings were clearly erroneous. As we have explained, nothing in the record, including the police body camera footage, directly contradicts any of the statements. Accordingly, we are not persuaded that a motion to suppress on the grounds of alleged falsities in the warrant affidavit would have had merit. We therefore conclude that counsel was not ineffective by failing to pursue a motion to suppress on that basis.

¶20 Tarkenton also contends that the circuit court erred by failing to hold a second *Machner* hearing based on his motion for reconsideration. He argues that his motion sufficiently alleged that trial counsel was ineffective for failing to advise him that he had a potential defense to the OWI charge. Specifically, Tarkenton contends that nothing in the record proves that he drove while impaired, and he argues that the State could not prove that Tarkenton did not take the drugs after he finished driving, in the eight minutes between when police were dispatched and when they made contact with Tarkenton. According to Tarkenton, he was unable to communicate that potential defense to his counsel because his counsel failed to take the time to adequately discuss the case with him. He argues that his defense counsel had the obligation to look at the facts of the case and determine whether Tarkenton had any defenses, and that a reasonable attorney would have identified this potential defense based on the facts. Tarkenton contends that his motion for reconsideration should have been liberally construed as asserting a new claim of ineffective assistance of counsel, not just a challenge to the court's decision on the prior claims.

¶21 We conclude that, even liberally construing Tarkenton's filing as a second postconviction motion, the circuit court properly denied the motion without a hearing. The motion asserted the following: there was a seven-minute lapse between when officers were dispatched to Tarkenton's residence and when

9

police made contact with him[3]; Tarkenton ingested drugs and became intoxicated in those seven minutes; trial counsel failed to identify a possible defense that there was no evidence that Tarkenton was impaired prior to the time when police were dispatched; and, if Tarkenton had known that was a possible defense, he would not have entered his plea. However, nothing in the motion asserts that Tarkenton told trial counsel that he did not take the drugs until he finished driving.[4] *See State v. Love*, 2005 WI 116, ¶27, 284 Wis. 2d 111, 700 N.W.2d 62 (our review of the sufficiency of a postconviction motion is limited to the four corners of the motion). We do not agree that this defense would have been obvious to a reasonable attorney, particularly in light of the reports of Tarkenton's odd driving prior to the officers' contact with him at the house.

¶22     Finally, Tarkenton argues that trial counsel should have collaterally attacked two of his prior OWI convictions. The State responds that this argument was not raised in the circuit court. Tarkenton does not refute that he raised this argument for the first time on appeal. We therefore do not address this argument further. *See State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997).

---

[3] In his appellate briefing, Tarkenton argues that the lapse was actually eight minutes long. Both calculations are supported by parts of the record, and it makes no difference to our analysis which number is used.

[4] In his reply brief, Tarkenton asserts for the first time that he did, in fact, tell trial counsel about his "8-minute defense." He asserts that, in response, his counsel told him that it did not matter because the police would just lie, and advised Tarkenton to take the plea deal offered by the State. However, as explained, our review of the motion is limited to the four corners of the motion. *See State v. Love*, 2005 WI 116, ¶ 27, 284 Wis. 2d 111, 700 N.W.2d 62. We do not consider facts asserted for the first time on appeal.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).